672 P.2d 290

**Vance KABELLA, a minor, Joan Kabella, individually and as next friend of Vance Kabella, Plaintiffs-Appellants,**

v.

**Greg BOUSCHELLE, Defendant-Appellee.**

No. 7084.

Court of Appeals of New Mexico.

Oct. 20, 1983.

Stephen G. French, Jerry A. Walz, Walz, Andazola & French, P.A., Albuquerque, for plaintiffs-appellants.

Norman F. Weiss, Farlow, Simone & Roberts, P.A., Albuquerque, for defendant-appellee.

## OPINION

DONNELLY, Judge.

Plaintiffs appeal from an order of the district court granting summary judgment and dismissing their complaint seeking damages against defendant for injuries sustained by Vance Kabella during an informal game of tackle football played by four participants, all minors.

Plaintiffs contend on appeal that the trial judge erred in granting summary judgment, and that the complaint filed herein properly alleged a cause of action in negligence for injuries sustained by a participant in a contact sport resulting from the activities of another participant. We affirm the trial court's award of summary judgment.

Vance Kabella, by and through his mother as next friend, filed suit against Greg Bouschelle, alleging that on October 24, 1981, both Kabella and Bouschelle with two other players were engaged in a friendly game of tackle football. At the time of the injury, the game had been in progress for approximately a half-hour. Kabella's complaint alleged that during the game he was carrying the ball and Bouschelle attempted to tackle him. As Bouschelle grasped Kabella and began to wrestle him down, Kabella announced several times, "I'm down," but Bouschelle continued to tackle plaintiff throwing him to the ground and falling on him, causing Kabella to sustain a dislocated hip. The complaint further alleged that among the players it was the practice and rule in the game to terminate the play when a ball-carrier announced he was "down" and that Bouschelle breached his duty of care to Kabella, subjecting him to an unreasonable risk of harm. The complaint of plaintiffs sought a total of $107,310.28 for personal injuries, pain and suffering and medical expenses.

After the injury was sustained, and prior to the filing of suit, Bouschelle attained the age of majority; Kabella remained a minor. Bouschelle filed a motion for summary judgment. Neither of the parties filed affidavits in support of or in opposition to the motion for summary judgment, but relied solely upon the depositions of Kabella, Bouschelle and two other participants in the football game. After a hearing on the motion, the trial court granted summary judgment finding that Bouschelle was entitled to judgment as a matter of law.

The issue here is whether under these facts a participant in an athletic activity involving physical contact between the players may recover in tort for the alleged negligent conduct of another participant. This is a matter of first impression in this jurisdiction.

Other jurisdictions which have addressed similar issues have, under varying rationales, permitted recovery in tort for sports injuries predicated upon three divergent legal theories: (1) assault and battery; (2) negligence; and (3) wilful or reckless misconduct. *See generally* J. Weistart & C. Lowell, The Law of Sports, § 8 at 933 (1979); 84 Dick.L.Rev. 753 (1980); 42 Mo.L. Rev. 347 (1977). A player may be liable for assault and battery if he acts intending to cause a harmful or offensive contact upon another participant in a game and injury results from his actions. *Griggas v. Clauson,* 6 Ill.App.2d 412, 128 N.E.2d 363 (1955) (amateur basketball player struck by opposing player); *see generally Thomas v. Barlow,* 5 N.J.Misc. 764, 138 A. 208 (1927) (plaintiff suffered fractured jaw during a basketball game); *Bourque v. Duplechin,* 331 So.2d 40 (La.App.1976), *cert. denied,* 334 So.2d 210 (La.1976) (infielder in softball game injured base runner by blocking runner's line of travel). New Mexico courts also recognize a civil right of action grounded upon allegations of assault and battery. *See, e.g., Rael v. Cadena,* 93 N.M. 684, 604 P.2d 822 (Ct.App.1979); *Faubion v. Tucker,* 58 N.M. 303, 270 P.2d 713 (1954).

In the past, the defense of consent has generally been held to preclude recovery for sports injuries brought upon a theory of assault and battery. *See Hellriegel v. Tholl,* 69 Wash.2d 97, 417 P.2d 362 (1966) (recovery not allowed for plaintiff who suffered broken neck during roughhouse horseplay); *McAdams v. Windham,* 208 Ala. 492,

94 So. 742 (1922) (no recovery for plaintiff's intestate who died during a boxing match).

The courts in other jurisdictions are not in agreement as to whether participants in sports activities may recover in tort from a fellow player under a pure negligence theory. *See Niemczyk v. Burleson,* 538 S.W.2d 737 (Mo.App.1976). In *Kuehner v. Green,* 436 So.2d 78 (Sup.Ct.Fla.1983), Justice Boyd, in his concurring opinion noted:

> Historically, the courts have been reluctant to allow persons to recover money damages for injuries received while participating in a sport, especially a contact sport, unless there was a deliberate attempt to injure. In denying recovery, the courts have often explained that a person who participates in a sport assumes the risk that he or she may be injured. Only recently have some courts allowed a sport participant to recover damages for injuries resulting from unintentional but reckless misconduct. *See Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516 (10th Cir.1979), *cert. denied,* 444 U.S. 931 [100 S.Ct. 275, 62 L.Ed.2d 188] (1979); *Nabozny v. Barnhill,* 31 Ill.App.3d 212, 334 N.E.2d 258 (1975).

Similarly, the court in *Nabozny v. Barnhill* remarked, "There is a dearth of case law involving organized athletic competition wherein one of the participants is charged with negligence .... A number of other jurisdictions prohibit recovery generally for reasons of public policy. (*E.g. Gaspard v. Grain Dealers Mutual Insurance Co.* (La. App.1961), 131 So.2d 831.)" 334 N.E.2d at 260. *See also* Annot. 7 A.L.R.2d 704 (1949).

Recent cases involving damage claims sounding in tort between opposing players in a sports activity have upheld the right of a participant to bring suit only when an intentional or wilful and reckless infliction of injury is alleged. *Ross v. Clouser,* 637 S.W.2d 11 (Mo.1982); *Oswald v. Township High School Dist. No. 214,* 84 Ill.App.3d 723, 40 Ill.Dec. 456, 406 N.E.2d 157 (1980);

*Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516, 524 (10th Cir.1979), *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979); *Stewart v. D & R Welding Supply Co.,* 51 Ill.App.3d 597, 9 Ill.Dec. 596, 366 N.E.2d 1107 (1977).

■ Contributory negligence and assumption of the risk are generally held to constitute defenses to actions in tort grounded upon allegations of wilful or reckless conduct.[1] *Ross v. Clouser; see also Nabozny v. Barnhill; Dudley v. William Penn College,* 219 N.W.2d 484 (Iowa 1974); *Boynton v. Ryan,* 257 F.2d 70 (3rd Cir.1958); *Mann v. Nutrilite, Inc.,* 136 Cal.App.2d 729, 289 P.2d 282 (1955). In New Mexico, assumption of the risk has been subsumed by the defense of contributory negligence. *Williamson v. Smith,* 83 N.M. 336, 491 P.2d 1147 (1971); *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981); *see also* NMSA 1978, UJI Civ. 16.2 (Cum.Supp.1983).

■ Voluntary participation in a football game constitutes an implied consent to normal risks attendant to bodily contact permitted by the rules of the sport. Such risks are foreseeable or inherent to the playing of the sport. *See* Restatement (Second) § 50, Comment b (1965). Participation in a game involving bodily contact, however, does not constitute consent to contacts which are prohibited by the rules or usages of the sport if such rules are designed for the protection of the participants and not merely to control the mode of play of the game. *Id.*

In *Hackbart v. Cincinnati Bengals, Inc.,* the plaintiff, a professional football player, brought suit against a player on an opposing team, alleging he received an injury inflicted by the intentional striking of a blow to his head and neck resulting in a serious neck fracture. The plaintiff pled both claims of negligence and reckless misconduct on the part of defendant. The trial court denied a right of recovery on public policy grounds, finding that the injuries

---

1. For a discussion of the treatment of a defendant's intentional or wilful, wanton and reckless conduct when compared to a plaintiff's conduct in a comparative negligence jurisdiction, *see* H. Woods, Comparative Fault § 7.2 (1978) and V. Schwartz, Comparative Negligence ch. 5 (1974). *Compare Keuhner v. Green.*

received were an inherent aspect of professional football. On appeal, however, the circuit court held that plaintiff's complaint alleging reckless or intentional misconduct by defendant resulting in injury on the part of plaintiff, stated a valid cause of action; the court noted that under such circumstances allegations of negligent misconduct would not suffice. The Tenth Circuit Court of Appeals adopted the rule enunciated in the Restatement (Second) of Torts, § 500, as the standard of care required by a participant in a contact sport towards a fellow player. Restatement (Second) of Torts, § 500, provides:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

The court in *Hackbart* observed that the Restatement (Second) of Torts, § 500, distinguishes between conduct which is reckless and that which is negligent. Reckless misconduct differs from negligence, in that the latter consists of mere inadvertance, lack of skillfulness or failure to take precautions, while reckless misconduct involves a choice or adoption of a course of action either with knowledge of the danger or with knowledge of facts which would disclose this danger to a reasonable man. *Hackbart* also held that "[r]ecklessness also differs in that it consists of intentionally doing an act with knowledge not only that it contains a risk of harm to others as does negligence, but that it actually involves a risk substantially greater in magnitude than is necessary in the case of negligence." 601 F.2d at 524. The court also noted noted that recklessness differs from the intentional infliction of harm or assault and battery. *See also* NMSA 1978, UJI Civ. 16.19 (Cum. Supp.1983).

In *Nabozny v. Barnhill*, the right of a minor plaintiff who was a goal tender in a soccer game to assert a tort claim against an opposing player was upheld. There, the plaintiff alleged defendant intentionally violated a rule of soccer by entering the penalty area and kicking him in the head, thereby inflicting serious injury. Plaintiff alleged that under the rules, any contact with a goalkeeper in possession of the ball in the penalty area was an infraction of a rule, even if the contact was unintentional. The court held:

> [T]he law should not place unreasonable burdens on the free and vigorous participation in sports by our youth. However, we also believe that organized, athletic competition does not exist in a vacuum. Rather, some of the restraints of civilization must accompany every athlete onto the playing field. One of the educational benefits of organized athletic competition to our youth is the development of discipline and self control.
>
> Individual sports are advanced and competition enhanced by a comprehensive set of rules. Some rules secure the better playing of the game as a test of skill. Other rules are primarily designed to protect participants from serious injury. (Restatement (Second) of Torts, Sec. 50, comment b.).
>
> . . . .
>
> It is our opinion that a player is liable for injury in a tort action if his conduct is such that it is either deliberate, wilful or with a reckless disregard for the safety of the other player so as to cause injury to that player, the same being a question of fact to be decided by a jury.

334 N.E.2d at 260–61.

In the instant case, the players at the time of the infliction of Kabella's injury were not involved in any organized athletic activity being played under the supervision of coaches or referees, or a definite set of rules. The participants were playing under a loose set of rules informally agreed upon among themselves. Nothing in Kabella's complaint alleged that Bouschelle's conduct

was intentional.[2] Nor did Kabella's complaint allege that Bouschelle's conduct was wilful or reckless in its nature. Although Kabella alleged the players had agreed to stop play activity when the ball carrier yelled, "I'm down," Kabella's complaint does not allege that this practice or rule was for the protection or safety of a participant, or that violation of the rule constituted an intent to harm Kabella, or amounted to reckless conduct on the part of Bouschelle. The players were not using protective equipment and no allegation is made as to the ground condition where the game was being played. *Cf. Stewart v. D & R Welding Supply Co.*

 Although we are mindful of the fact that *Nabozny* and *Hackbart* involved organized sports activities under supervision, dissimilar from the facts applicable here, nevertheless we think for reasons of public policy the standard of care articulated in *Hackbart* is applicable to cases in this jurisdiction involving tort claims between participants in athletic activities normally involving physical contact. Vigorous and active participation in sporting events should not be chilled by the threat of litigation. The players in informal sandlot or neighborhood games do not, in most instances, have the benefit of written rules, coaches, referees or instant replay to supervise or re-evaluate a player's actions. As stated in *Ross v. Clouser,* 637 S.W.2d at 14, a cause of action for personal injuries between participants incurred during athletic competition must be predicated upon recklessness or intentional conduct, "not mere negligence." "Fear of civil liability stemming from negligent acts occurring in an athletic event could curtail the proper fervor with which the game should be played and discourage individual participation, yet it must be recognized that reasonable controls should exist to protect the players and the game." *Id., see also Nabozny,* 334 N.E.2d at 260.

In adopting the standard of reckless or wilful conduct as a requisite of pleading and proof in tort cases involving participants engaged in contact athletic activities, our ruling is a limited one. The liability of, among others, landowners, employers and other non-participants for their negligent acts or omissions resulting in injury to spectators, players or others associated with sporting events is in no way affected by our ruling herein. *See, e.g., McFatridge v. Harlem Globe Trotters,* 69 N.M. 271, 365 P.2d 918 (1961); *Manassa v. New Hampshire Insurance Co.,* 332 So.2d 34 (Fla.App.1976); *Dawson v. Rhode Island Auditorium, Inc.,* 104 R.I. 116, 242 A.2d 407 (1968); *Morris v. Union High School Dist. A,* 160 Wash. 121, 294 P. 998 (1931). It is appropriate to note also that the parties and the other players at the time of Kabella's injury were all minors. Children are not necessarily held to the same standard of conduct as adults. NMSA 1978, UJI Civ. 16.5 (Repl.Pamp. 1980); *see also Phillips v. Smith,* 87 N.M. 19, 528 P.2d 663 (Ct.App.1974).

As conceded by the Kabellas' brief-in-chief, their complaint is based upon a negligence theory. The Kabellas have not pled a cause of action against Bouschelle for infliction of an intentional tort or reckless conduct. Under the facts alleged in the Kabellas' complaint and the facts contained in the depositions relied upon in the motion for summary judgment, the trial court correctly granted summary judgment herein. *See Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972).

The order awarding summary judgment is affirmed.

IT IS SO ORDERED.

WALTERS, C.J., and HENDLEY, J., concur.

---

**2.** When describing the tackle made by Bouschelle, Kabella stated in his deposition, "I'm sure it might not have been intentional ... I'm sure that he is not the type of guy who wants to dislocate a hip." Kabella's attorney also stated in the deposition that the plaintiffs' suit was based on a negligence theory only.