HANSON, APPELLANT, *v.*
KYNAST, APPELLEE.

(No. CA-870—Decided
April 9, 1987.)

*Brown, Bemiller, Murray & McIntyre* and *Jeffrey L. Molyet,* for appellant.

*Earl, Warburton & Adams* and *Andrew S. Adams,* for appellee.

HOFFMAN, J. Brian K. Hanson is plaintiff-appellant herein and William Kynast is defendant-appellee.

On May 1, 1982, Hanson sustained paralyzing injuries while playing in a lacrosse game for Ohio State University ("OSU") against Ashland University. With some four minutes remaining in the game, at Ashland, Roger Allen, an OSU teammate of Hanson, intercepted a pass and scored a goal. As Allen was scoring, he was "body-checked" from behind by an Ashland defender, Kynast. Allen fell and Kynast allegedly lingered over Allen, taunting him. Hanson, apparently unobserved by Kynast, grabbed Kynast from the side or back and held him in a bear hug. Kynast immediately twisted and flipped Hanson over his (Kynast's) back, with Hanson's head striking the ground. The evidence is undisputed that appellant Hanson sustained his injury upon impact with the ground.

On December 13, 1983, Hanson filed an amended complaint in the Court of Common Pleas of Ashland County against Kynast, Ashland University, Bachrach-Rasin, Inc. and Stall & Dean Manufacturing Company, Inc. (Hanson claimed these latter two parties were negligent in the design of lacrosse equipment. Neither of these two parties is part of the instant appeal.)

Ashland University filed a motion for summary judgment which was granted on November 16, 1984. The trial court held that no agency relationship existed between Kynast and Ashland University, and that the university did not have a legal duty to have an ambulance at the game. (It was alleged by Hanson that the failure of the university to provide timely medical attention to him contributed to his injury.)

In a split decision filed June 3, 1985, this court reversed the judgment of the trial court, stating that genuine issues of fact existed as to the university's potential liability. The Ohio Supreme Court reversed this court in a July 2, 1986 opinion, holding the trial court correctly granted summary judgment in favor of Ashland University. *Hanson* v. *Kynast* (1986), 24 Ohio St. 3d 171, 24 OBR 403, 494 N.E. 2d 1091.

Shortly after Ashland University filed for summary judgment, Kynast

also did so. However, Kynast's motion was stayed pending resolution of the university's motion and the appeal resulting therefrom. On October 8, 1986, the trial court issued a lengthy opinion granting summary judgment to Kynast. The basis of the trial court's opinion was that Hanson had assumed the risk of any possible injury to himself when he grabbed Kynast, to wit:

"We would believe and so find from plaintiff's own testimony that his action in grabbing the defendant in the manner that he did precipitated and was the cause of his resultant injury. We would further find that there was no activity on the part of the defendant which would justify the grabbing of the defendant, as was done in this case, any more than the emptying of the benches in any of our national sports where the players, in the heat of the moment, become engulfed in fisticuffs when they believe a companion to [have been] dealt with unfairly, with the fists and arms flaying madly and people struck and wrestled to the ground in groups, or otherwise." (Oct. 8, 1986 opinion of trial court at 2.)

The trial court journalized its order granting summary judgment in favor of Kynast by filing a judgment entry on October 23, 1986 in which it incorporated its October 8, 1986 opinion, as well as the extensive findings of fact and conclusions of law which were filed on November 6, 1984. In its entry of October 23, 1986, the trial court also stated "that there is no genuine issue of material fact as against the defendant, William Kynast" and "that this defendant is entitled to judgment as a matter of law."

Appellant Hanson now raises the following four assignments of error:

### Assignment of Error No. I

"The trial court committed prejudicial error by awarding summary judgment * * * [to] defendant-appellee based on the trial court's conclusion that no cause of action exists for injuries suffered during an athletic event."

### Assignment of Error No. II

"The court below committed prejudicial error by awarding summary judgment to defendant-appellee when a conflict of testimony exist[ed] as to all of the facts upon which the trial court relied in awarding said summary judgment and where the court clearly engaged in [a] weighing of [the] evidence in order to award said summary judgment, all contrary to * * * the law of Ohio as established by Ohio Rule of Civil Procedure 56(C) and the case law construing said rule."

### Assignment of Error No. III

"The trial court committed prejudicial error by incorporating by reference in its opinion and relying upon the findings of fact previously issued by that court on another party's motion for summary judgment."

### Assignment of Error No. IV

"The trial court committed prejudicial error in granting summary judgment for defendant-appellee Kynast, since the court recognized that a conflict existed in the record before the court but nevertheless granted summary judgment based only on one part of the tripartite test established by Ohio Rule of Civil Procedure 56(C)."

### I

Under this assigned error, appellant argues that the thrust of the trial court's opinion is that no cause of action exists when an individual participant in a sporting event is injured by another participant.

We believe that appellant seriously misreads the trial court's opinion. Here is the language in question, cited

also by appellee in an effort to rebut appellant:

"* * * Understandably, this unique relationship [*i.e.,* between sports and injuries sustained therein] should not extend its immunity to that player whose activity demonstrates a specific and perverse intent to cause physical injury to another separate and apart from the heat of the contest." (Oct. 8, 1986 opinion of trial court at 4.)

What the trial court is saying is that an athlete is not immune from liability for an intentional tort. That is what the court is describing when it states "a specific and perverse intent to cause physical injury."

Put another way, this court understands the trial court to be saying the duty *not* to commit an intentional tort against another remains intact, even in the heat of battle in a spirited body-contact sport such as lacrosse.

By his own characterization, as reflected in his appellate brief, appellant's first assigned error is "limited to the question of whether a cause of action exists as a matter of legal doctrine in Ohio where one participant in a sporting activity is injured by another."

We believe that a cause of action does exist in such a situation, but only for an intentional tort, *i.e.,* an intentionally inflicted injury not arising out of the ongoing conduct of the sport itself, as herein. For example, if Kynast, five minutes after the game was over, had run across the field and thrown a body block at Hanson, or if Hanson had done the same to Kynast, then an obvious cause of action would exist. However, the facts as presented to the trial court show no element of intent to injure on the part of Kynast. Everyone agrees, including all three courts that have reviewed this tragic injury, that Kynast's action was reflexive and instinctive.

This assignment of error is not well-taken and it is overruled.

## II

Herein appellant Hanson disputes whether summary judgment was appropriately awarded to his adversary. In reviewing appellant's assigned errors, we believe this one is central to appellant's appeal. This is so because, as in all summary judgment appeals, it is an "all or nothing" decision on the part of this court, whether to allow summary judgment to stand or reverse for a trial on the merits.

Having already held that the only cause of action in the instant situation that can exist (and thus survive a summary judgment motion) is an intentional tort, we must necessarily conclude and rule that summary judgment was appropriate and proper in the case *sub judice.* Our holding is briefly this: Construing the evidence most strongly in Hanson's favor, we must conclude that no ascertainable duty was breached giving rise to a cause of action. The evidence is not sufficient to support a viable cause of action for an intentional tort and this assignment of error must be overruled.

## III

This assignment claims error on the part of the trial court in incorporating the findings of fact and conclusions of law rendered on November 6, 1984, with respect to Ashland University's motion for summary judgment, into the instant summary judgment entry. Although we admit this is an unorthodox approach, our ruling on this claim of error is that the incorporation of previous findings of fact and conclusions of law does not bear *materially* on the trial court's grant of summary judgment herein in favor of Kynast. The incorporation of certain findings of fact and conclusions of law relating to the university are merely superfluous. No prejudice is evident herein. Without their inclusion, the trial court still would have ruled cor-

rectly on granting summary judgment to Kynast.

The assignment of error is overruled.

## IV

By this assignment of error, appellant repeats his attack on the trial court's summary judgment in favor of appellee Kynast. We believe that the trial court found no genuine issue of material fact and said so both in its opinion and judgment entry. This court concurs with the lower court in that regard.

Also, we cannot improve on the statement in appellee's appellate brief that Hanson has been unable "to meet that burden (of showing breach of duty) on a factual basis and a review of the law pertinent to the manner in which this judgment was rendered would support the trial court's ruling unequivocally."

This assignment of error is overruled.

## V

For the above reasons all four of appellant's assignments of error are overruled and the judgment of the Court of Common Pleas of Ashland County is affirmed.

*Judgment affirmed.*

TURPIN, J., concurs.

MILLIGAN, P.J., concurs separately.

MILLIGAN, P.J., concurring separately. I concur with the majority's decision that summary judgment was properly granted in the instant case. However, I write separately to clarify the thorny issues this case presents with regard to the existence, nature, and scope of duty owed by one athlete to another during the course of an athletic event.

To defeat a motion for summary judgment in a negligence case the plaintiff must show:

(1) That the defendant owed a duty to plaintiff;

(2) That defendant breached that duty;

(3) That plaintiff suffered injuries; and

(4) That defendant's breach of duty proximately caused plaintiff's injuries. See *Keister* v. *Park Centre Lanes* (1981), 3 Ohio App. 3d 19, 22-24, 3 OBR 20, 23-25, 443 N.E. 2d 532, 535-536.

### I. Duty

The first hurdle in this analysis is the issue of the existence, nature, and scope of duty. There can be no liability for negligence absent a duty owed to a particular plaintiff. *Hager* v. *Griesse* (1985), 29 Ohio App. 3d 329, 29 OBR 456, 505 N.E. 2d 982; *Hager* v. *Griesse* (Mar. 19, 1986), Licking App. No. CA-3143, unreported.

The initial question is whether, under the facts and circumstances of the instant case, such a relationship existed between the parties that the law will impose a legal duty upon one or the other.

There is a dearth of case law in Ohio involving organized athletic competition in which one of the participating athletes is charged with intentional, reckless, or negligent misconduct toward another participating athlete. We therefore look to other jurisdictions for guidance.

Courts have avoided adopting a negligence standard in such cases because the standard would simply place unreasonable burdens on the "free and vigorous participation in sports." *Nabozny* v. *Barnhill* (1975), 31 Ill. App. 3d 212, 215, 334 N.E. 2d 258, 260. See, also, *Hackbart* v. *Cincinnati Bengals, Inc.* (C.A. 10, 1979), 601 F. 2d 516, 518-519, 520, 526 (interpreting Colorado law); *Kabella* v. *Bouschelle*

(App. 1983), 100 N.M. 461, 465, 672 P. 2d 290, 294.

"* * * Fear of civil liability stemming from negligent acts occurring in an athletic event could curtail the proper fervor with which the game should be played and discourage individual participation * * *." *Ross* v. *Clouser* (Mo. 1982), 637 S.W. 2d 11, 14.

A young athlete early learns that he may never "make the team" unless willing to participate with "reckless abandon."

Paradoxically, courts have found a duty based on an intentional or recklessness standard. See *Hackbart* v. *Cincinnati Bengals, Inc., supra,* 601 F. 2d at 520-521, 525; *Bourque* v. *Duplechin* (La. App. 1976), 331 So. 2d 40, 43; *Nabozny* v. *Barnhill, supra,* at 215, 334 N.E. 2d at 260-261.

The majority herein fails to specifically identify precise standards of duty which recognize a balance between clearly objectionable athletic misconduct and conduct generally recognized as either an integral or collateral part of the athletic contest involved. See, generally, Note, Compensating Injured Professional Athletes: The Mystique of Sport versus Traditional Tort Principles (1980), 55 N.Y.U.L. Rev. 971; Comment, Torts in Sports — "I'll see you in court!" (1983), 16 Akron L. Rev. 537.

Courts considering this problem have given little consideration to a precise definition of the requisite intent in the context of conduct on the athletic field. One reason for this lack of attention may be a general-sense meaning of "intent." "* * * As Holmes observed, even a dog knows the difference between being tripped over and being kicked. * * * [However,] '[i]ntent' is also one of the most often misunderstood legal concepts. * * *" (Footnotes omitted.) Prosser & Keeton, Law of Torts (5 Ed. 1984) 33, Section 8.

"Intent" denotes "* * * that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to result from it." 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A.

Thus, an intentional tort is characterized by the intentional act of an actor to cause the specific harm suffered by the victim. The actor is certain, or substantially certain, that the desired consequences will result from his intentional act. In the context of athletic competition, an intentional tort characterizes the conduct of an athlete whereby he or she intentionally acts to cause a specific harm or injury. Such acts must be reasonably unforeseeable in the context of the particular athletic event engaged in.

Recklessness, on the other hand, involves a lesser degree of substantial certainty that the specific injury will result from the intentional act:

"* * * If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness, as defined in § 500. As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence, as defined in § 282. * * *" 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A, Comment b.[1]

"* * * If the manifest probability of harm is very great, and the harm follows,

---

[1] Compare Holmes, Privilege, Malice, and Intent (1894), 8 Harv. L. Rev. 1, at 1:

This nebulous continuum has lead courts to use various formulations to define reckless conduct. See, *e.g., Bourque* v. *Duplechin, supra,* 331 So. 2d at 43 ("reckless disregard of the consequences to [the victim]"); *Nabozny* v. *Barnhill, supra,* at 215, 334 N.E. 2d at 261 ("a reckless disregard for the safety of the other player[s]"); *Kabella* v. *Bouschelle, supra,* at 465, 672 P. 2d at 294 ("reckless or wilful conduct"). These tautological definitions of recklessness do not provide much assistance in analyzing the facts of a specific case. Some courts, however, turn to the Restatement of Torts 2d for a clearer definition. See, *e.g., Hackbart* v. *Cincinnati Bengals, Inc., supra,* 601 F. 2d at 524-525; *Matheson* v. *Pearson* (Utah 1980), 619 P. 2d 321, 322-323.

"The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." 2 Restatement of the Law 2d, Torts (1965) 587, Section 500.

This relative definition is clarified by the Official Comments to Section 500. See Comment *a* to the Restatement, *supra,* at 588 ("the risk must itself be an unreasonable one under the circumstances"); Comment *f* to the Restatement, *supra,* at 590 (intentional misconduct and recklessness contrasted); Comment *g* to the Restatement, *supra,* at 590 (negligence and recklessness contrasted). The circuit court in *Hackbart* explained the relative relationship of this continuum. *Hackbart* v. *Cincinnati Bengals, Inc., supra,* 601 F. 2d at 524.[2] In distinguishing reckless misconduct from intentional wrongdoing, the *Hackbart* court stated:

"* * * To be reckless the *act* must have been intended by the actor. At the same time, the actor does not intend to cause the harm which results from it. It is enough that he realized, or from the facts should have realized, that there was a strong probability that harm would result even though he may hope or expect that this conduct will prove harmless. Nevertheless, existence of probability is different from substantial certainty which is an ingredient of intent to cause the harm which results from the act." (Emphasis *sic.*) *Hackbart* v. *Cincinnati Bengals, Inc., supra,* 601 F. 2d at 524.

See, also, *Matkovich* v. *Penn Central Transp. Co.* (1982), 69 Ohio St. 2d 210, 214, 23 O.O. 3d 224, 227, 431 N.E. 2d 652, 655 ("failure to exercise care * * * under circumstances in which there is a great probability that harm will result" and failure to exercise any care whatsoever for the safety of others is wanton misconduct).

Thus, reckless misconduct results

---

we say that it is done maliciously or intentionally; if not so great, but still considerable, we say that the harm is done negligently; if there is no apparent danger, we call it mischance."

[2] Cf. Prosser & Keeton, Law of Torts (5 Ed. 1984) 208, 212, Section 34:

"A different approach, at least in theory, looks to the actor's real or supposed state of mind. Lying between intent to do harm, which * * * includes proceeding with knowledge that the harm is substantially certain to occur, and the mere unreasonable risk of harm to another involved in ordinary negligence, there is a penumbra of what has been called 'quasi-intent.' To this area the words 'willful,' 'wanton,' or 'reckless,' are customarily applied; * * *." (Footnotes omitted.)

when a person, with no intent to inflict the particular harm, intentionally performs an act so unreasonably dangerous that he knows or should reasonably know that it is highly probable that harm will result.[3]

In the context of athletic contests, "recklessness" will vary depending on the nature of the particular athletic event or sport. For example, the sport of lacrosse involves a greater degree of violent physical contact than do the running events of track and field competition. Cf. *Oswald* v. *Twp. High School Dist. No. 214* (1980), 84 Ill. App. 3d 723, 727, 406 N.E. 2d 157, 160 ("participants in bodily contact games such as basketball assume greater risks than do golfers and others involved in nonphysical contact sports"). The *quid pro quo* of an "assumed greater risk" is a diminished duty. Thus, participants in bodily contact games such as basketball (and lacrosse) owe a lesser duty to each other than do golfers and others involved in non-physical contact sports. Injuries resulting from violent physical contact are reasonably foreseeable in sports such as lacrosse or football. However, injuries which result from conduct on the playing field which are not reasonably foreseeable are of a different nature. The focus is on the reasonable foreseeability of the conduct, and not on the particular injury. Naturally, this foreseeability is dependent upon such factors as the nature of the sport involved, the rules and regulations which govern the sport, the customs and practices which are generally accepted and which have evolved with the development of the sport, and the facts and circumstances of the particular case. Another factor is whether or not the sport is played professionally.

Such a standard is intended to strike a delicate balance between allowing the free and uninhibited participation and development of sports, and curbing the excessive violence sometimes extant in certain sports.

Defenses may be raised in such cases which directly impact the nature and extent of the duty owed (the combatant in an amateur boxing match consents to behavior measured by a diminished duty). Typical defenses include assumption of risk, contributory negligence, and consent. Assumption of risk and contributory negligence have merged under the Ohio comparative negligence paradigm. *Anderson* v. *Ceccardi* (1983), 6 Ohio St. 3d 110, 6 OBR 170, 451 N.E. 2d 780. This merger of contributory negligence and assumption of risk implies that reasonable foreseeability is an element of both. The law provides, under assumption of risk, that one assumes only those risks which are reasonably foreseeable. *Bourque* v. *Duplechin, supra,* 331 So. 2d at 42; *Kabella* v. *Bouschelle, supra,* at 463, 672 P. 2d at 292. Contributory negligence focuses on the conduct of the plaintiff, and leaves unaffected the characterization of the

---

[3] Cf. Prosser & Keeton, Law of Torts, *supra,* at 208, 213-214, Section 34:

"The usual meaning assigned to 'willful,' 'wanton,' or 'reckless,' according to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences.* * * .

"The result is that 'willful,' 'wanton,' or 'reckless' conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent.* * *" (Footnotes omitted.)

conduct of the tortfeasor. The *defense of consent,* in the context of an athletic event, is specifically treated at 1 Restatement of the Law 2d, Torts (1965) 86, Section 50, Comment *b:*

"Taking part in a game manifests a willingness to submit to such bodily contacts or restrictions of liberty as are permitted by its rules or usages. Participating in such a game does not manifest consent to contacts which are prohibited by rules or usages of the games if such rules or usages are designed to protect the participants and not merely to secure the better playing of the game as a test of skill. This is true although the player knows that those with or against whom he is playing are habitual violaters of such rules."[4]

Thus, a player consents as a matter of law to assume the risk of injuries resulting from reasonably foreseeable conduct by other players. Such reasonable foreseeability is determined by the rules and regulations of the particular game, and the customs and practices generally accepted as a part of the game.

In the case *sub judice,* defendant Kynast, as a participant in a lacrosse match, had a duty to refrain from intentionally or recklessly inflicting harm upon other players. Intentional misconduct results when a lacrosse player intentionally performs an act to cause a specific harm or injury, a harm or injury which the player desires to cause or should know is certain to result from his act. Reckless misconduct results when a lacrosse player, with no intent to cause the specific harm or injury, intentionally performs an act so unreasonably dangerous that he knows or should reasonably know that it is highly probable that harm or injury will result. For there to be liability under either the intentional or recklessness standard, the intentional act must be reasonably unforeseeable in the context of an amateur, collegiate lacrosse match. What is reasonably unforeseeable depends upon a number of factors. These factors include the customs and practices generally accepted as a part of lacrosse; the level and degree of violence generally accepted as a part of lacrosse; the rules and regulations which govern lacrosse; the level of play, *i.e.,* whether it is played professionally or by amateurs, organized or unorganized, in college or in high school, etc.; and the particular facts and circumstances surrounding the particular match and incident. Also, the risks lacrosse players generally assume or consent to is another factor to weigh in assessing what risks and acts are reasonably unforeseeable.

## II. Breach of Duty

The next question in this sequential, consecutive analysis is whether defendant Kynast breached this duty.

The undisputed facts show that Kynast "checked" an opponent on ap-

---

[4] The Illustrations provided to Comment *b* of Section 50 are:

"4. A, a member of a football team, tackles B, a player on the opposing side. A's conduct is within the rules of the game. A is not liable to B.

"5. A, a member of a football team, tackles B, an opposing player, while he, A, is 'offside.' The tackle is made with no greater violence than would be permissible by the rules and usages of football were he 'onside.' A has not subjected B to a violence greater than, or different from, that permitted by the rules, although he is guilty of a breach of a rule. A is not liable to B.

"6. A, while tackling B, deliberately injuries him. A is subject to liability to B, whether the tackle was or was not otherwise within the rules and usages of football." 1 Restatement of the Law 2d, Torts (1965) 86, Section 50, Illustrations to Comment *b.*

pellant Hanson's team while that opponent was trying to score. Kynast then stood over the fallen opponent, taunting him. Hanson, in an effort to protect his teammate, rushed toward Kynast and grabbed him in a bear hug from behind. Kynast, in an effort to defend himself, flipped Hanson over in an apparent effort to get free from his grasp. Hanson landed on his head and, as a result of this flip, sustained severe injuries.

Appellee Kynast was acting entirely within the parameters of permitted conduct when he checked the opposing player. Furthermore, he did not violate any duty recognized at law when he taunted, menaced, and tried to intimidate his fallen opponent.[5] Such actions are a part of many contact sports, and are even condoned and encouraged. The risk of harm from such conduct is reasonably unforeseeable under the facts and circumstances of the instant case.

It is appellant Hanson's conduct in rushing toward Kynast and grabbing him from behind that was possibly outside the scope of reasonably foreseeable conduct in a lacrosse match. Hanson essentially argues that Kynast had a duty not only to refrain from intentionally or recklessly harming another during the course of the game, but to defend himself from unforeseeable violence upon his person in such a manner as not to inflict injury upon the perpetrator. One is charged with the exercise of reasonable care in defending oneself using only that amount of force sufficient to withstand the attack. Nowhere in his supporting affidavits and depositions does Hanson charge Kynast with violating that duty.

Therefore, whether analyzing this case under the standard of intentional or reckless misconduct, appellee Kynast's actions during the game breached no duty recognized at law.

### III. Injury

Plaintiff has demonstrated severe injury.

### IV. Proximate Cause

Because we find no breach of duty we do not reach the question of proximate cause.

### V. Conclusion

Absent the showing of evidence establishing each element of appellant Hanson's case, summary judgment was properly granted.

---

[5] Kynast was not penalized for the check or his subsequent conduct vis-a-vis the fallen opponent.