JOSEPH DOTZLER, APPELLANT, V. BRUCE TUTTLE, APPELLEE.

449 N.W.2d 774

Filed January 5, 1990.    No. 88-238.

Thomas M. White, of Fitzgerald, Schorr, Barmettler & Brennan, for appellant.

Joseph E. Jones and Kevin L. Reiner, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Plaintiff, Joseph Dotzler, sued the defendant, Bruce Tuttle, for injuries arising out of a collision between them during a "pickup" basketball game. The trial court sustained defendant's demurrer as to plaintiff's cause of action for negligence; the jury returned a verdict in favor of the defendant on the cause of action involving an allegation of recklessness. Plaintiff appeals.

Plaintiff assigns as error the actions of the trial court in (1) sustaining defendant's demurrer as to plaintiff's cause of action in negligence; (2) sustaining defendant's motion in limine excluding the testimony of plaintiff's expert witness; (3) instructing the jury that plaintiff, in order to meet his burden of proof, must establish that defendant acted with intent; (4) failing to instruct the jury that intent was not a part of plaintiff's burden of proof; (5) giving an instruction defining negligence and explaining the relationship between negligence and recklessness without defining intent; and (6) instructing that contributory negligence is a defense to recklessness.

Plaintiff and defendant were playing on opposing teams in a pickup basketball game during the noon hour at the Omaha Southwest YMCA on December 28, 1984. The two parties were not acquainted and had not played basketball against each other before.

It was plaintiff's testimony that he had just made a shot at the basket and moved back to play defense. He stated that he was standing near the top of the key when he saw a blur and felt a shove or push on his chest. The force of the collision sent him flying backward 19 or 20 feet, causing him to land near the baseline. Reaching back to break his fall, he fractured both of his wrists when he landed on the floor.

Plaintiff's brother Ron was playing on the same team with the defendant. Ron testified that he saw the plaintiff standing at about the free throw line and that the defendant ran to the plaintiff and the defendant's hands came out and pushed the plaintiff. The witness said he went up to the defendant immediately, and the latter said that "he's been doing it to me

the whole game and I'm getting sick and tired of it."

The defendant testified that he was coming down the court as if on a fast break, trying to get open for a pass. He said that he was not particularly aware of the plaintiff's presence. He stated that the two of them "banged together." He denied that he pushed the plaintiff and denied telling the plaintiff's brother that he was tired of being pushed around by the plaintiff.

Another witness, Frederick Stehlik, was on the sideline and saw the plaintiff at approximately halfway between the basket and the free throw line. Stehlik was not sure whether the plaintiff was stationary or moving. Stehlik did see the ball being brought down the court and saw the defendant moving. A player came across the court and obscured the witness' vision for just a split second, and the next thing he saw was the plaintiff falling.

Plaintiff contends that the trial court erred in sustaining the demurrer to his negligence cause of action. At issue is whether an individual participating in a contact sport has a cause of action against another participant because of injuries sustained as a result of ordinary negligence on the part of that other participant.

The majority of jurisdictions which have addressed this issue have held that suit by the injured participant, if not based on intentional infliction of injury, must be based on reckless disregard of safety; an allegation of negligence is not sufficient to state a cause of action.

The plaintiff in *Gauvin v. Clark*, 404 Mass. 450, 537 N.E.2d 94 (1989), was "butt-ended" in the abdomen with a hockey stick by the defendant. The court held that participants in an athletic event owe a duty to other participants to refrain from reckless misconduct, and liability may result from injuries caused to a player by reason of the breach of that duty. According to the court:

> The problem of imposing a duty of care on participants in a sports competition is a difficult one. Players, when they engage in sport, agree to undergo some physical contacts which could amount to assault and battery absent the players' consent. Restatement (Second) of Torts § 50 comment b (1965). The courts are wary of imposing wide

tort liability on sports participants, lest the law chill the vigor of athletic competition. See, e.g., *Ross v. Clouser*, 637 S.W.2d 11, 14 (Mo.1982). Nevertheless, "some of the restraints of civilization must accompany every athlete on to the playing field." *Nabozny v. Barnhill*, 31 Ill.App.3d 212, 215, 334 N.E.2d 258 (1975). "[R]easonable controls should exist to protect the players and the game." *Ross v. Clouser, supra.*

The majority of jurisdictions which have considered this issue have concluded that personal injury cases arising out of an athletic event must be predicated on reckless disregard of safety. See, e.g., *Hackbart v. Cincinnati Bengals, Inc.*, 601 F.2d 516, 524 (10th Cir.1979); *Nabozny v. Barnhill, supra*; *Ross v. Clouser, supra* at 14; *Kabella v. Bouschelle*, 100 N.M. 461, 465, 672 P.2d 290 (1983). Restatement (Second) of Torts § 500 comments e & g (1965).

We adopt this standard. Allowing the imposition of liability in cases of reckless disregard of safety diminishes the need for players to seek retaliation during the game or future games. See *Hackbart v. Cincinnati Bengals, Inc., supra* at 521. Precluding the imposition of liability in cases of negligence without reckless misconduct furthers the policy that "[v]igorous and active participation in sporting events should not be chilled by the threat of litigation." *Kabella v. Bouschelle, supra.*
*Gauvin, supra* at ____, 537 N.E.2d at 96-97.

Recovery of damages for injuries sustained in an informal game of tackle football was sought in *Kabella v. Bouschelle*, 100 N.M. 461, 672 P.2d 290 (1983). Following the rationale of Restatement (Second) of Torts § 50, comment *b.* (1965), the court found that voluntary participation in a football game constitutes an implied consent to the normal risks accompanying bodily contact permitted by the rules of the sport because such risks are foreseeable or inherent to the playing of the game. However, noted the court, participation in a game involving bodily contact does not constitute consent to contacts which are prohibited by the rules or usages of the sport if such rules are designed for the protection of the participants

and not merely to control the play of the game. Holding that participants in sports activities may not recover in tort from a fellow player under a pure negligence theory, the court stated:

> Vigorous and active participation in sporting events should not be chilled by the threat of litigation. The players in informal sandlot or neighborhood games do not, in most instances, have the benefit of written rules, coaches, referees or instant replay to supervise or re-evaluate a player's actions.

*Kabella, supra* at 465, 672 P.2d at 294.

In *Ross v. Clouser*, 637 S.W.2d 11 (Mo. 1982), the plaintiff third baseman sustained a severe knee injury during a softball game when the defendant runner, despite the fact that the plaintiff was not at the time blocking the base path, ran very fast toward the plaintiff rather than third base and then dove headfirst through the air at him. Holding that the basis for a cause of action for personal injuries sustained during athletic competition must be recklessness rather than mere negligence, the court stated:

> Fear of civil liability stemming from negligent acts occurring in an athletic event could curtail the proper fervor with which the game should be played and discourage individual participation, yet it must be recognized that reasonable controls should exist to protect the players and the game. Balancing these seemingly opposite interests, we conclude that a player's reckless disregard for the safety of his fellow participants cannot be tolerated. If a plaintiff pleads and proves such recklessness, he may seek relief for injuries incurred in an athletic competition.

*Id*. at 14.

A line of cases from Illinois establishes that jurisdiction's adherence to the position that a tort suit brought by an injured participant in a contact sport, if not based on intentional infliction of injury, must be based on recklessness. The plaintiff in *Nabozny v. Barnhill*, 31 Ill. App. 3d 212, 334 N.E.2d 258 (1975), sued the defendant for injuries sustained during a soccer game. The defendant, instead of turning away, continued to run toward the plaintiff, who, as goalkeeper, had possession of

the ball inside the penalty area, and kicked the plaintiff in the head and caused severe injuries. Addressing the issue of whether the defendant owed a duty to the plaintiff, the court stated:

> [W]hen athletes are engaged in an athletic competition; all teams involved are trained and coached by knowledgeable personnel; a recognized set of rules governs the conduct of the competition; and a safety rule is contained therein which is primarily designed to protect players from serious injury, a player is then charged with a legal duty to every other player on the field to refrain from conduct proscribed by a safety rule. A reckless disregard for the safety of other players cannot be excused. To engage in such conduct is to create an intolerable and unreasonable risk of serious injury to other participants.

*Id*. at 215, 334 N.E.2d at 260-61. Furthermore,

> a player is liable for injury in a tort action if his conduct is such that it is either deliberate, wilful or with a reckless disregard for the safety of the other player so as to cause injury to that player, the same being a question of fact to be decided by a jury.

*Id*. at 215, 334 N.E.2d at 261.

In *Oswald v. Township High School Dist. No. 214*, 84 Ill. App. 3d 723, 406 N.E.2d 157 (1980) (plaintiff was kicked and injured by defendant in the course of a physical education class basketball game), the court made it clear that *Nabozny v. Barnhill, supra,* was to be interpreted to mean that liability for injuries sustained as a result of breach of a safety rule in a contact sport cannot be predicated upon ordinary negligence; willful and wanton misconduct must be shown to permit recovery. The court found no merit to the plaintiff's suggestion that cases which hold that golfers owe a duty of ordinary care to other golfers are controlling, stating:

> [P]articipants in bodily contact games such as basketball assume greater risks than do golfers and others involved in nonphysical contact sports. Because rule infractions, deliberate or unintentional, are virtually inevitable in contact games, we believe the imposition of a different standard of conduct is justified where injury results from

such contact.

*Oswald, supra* at 727, 406 N.E.2d at 160.

The appellate court clarified *Oswald v. Township High School Dist. No. 214, supra,* in *Keller v. Mols,* 156 Ill. App. 3d 235, 509 N.E.2d 584 (1987) (plaintiff, goalie in a game of floor hockey, was struck in the eye by a plastic puck shot by defendant). According to the court, *Oswald v. Township High School Dist. No. 214, supra,* established that in order to determine whether a sports participant may be liable for injuries to another player caused by mere negligence, the relevant inquiry is whether the participants were involved in a contact sport, not whether they were organized and coached. See, also, *Ramos v. City of Countryside,* 137 Ill. App. 3d 1028, 485 N.E.2d 418 (1985).

A line of Louisiana cases, although couched in terms of negligence, indicates that the Louisiana courts require reckless conduct rather than mere negligence in order for a participant to recover from another participant for injury sustained during the course of a contact sport. The plaintiff in *Bourque v. Duplechin,* 331 So. 2d 40 (La. App. 1976), *writ denied* 334 So. 2d 210, filed suit to recover damages for injuries received in a softball game when the defendant, in running from first to second base, ran out of his way in order to run into the plaintiff second baseman, who was standing 5 feet away from second base. The court found that the defendant's conduct constituted negligence or perhaps even wanton negligence, but was not intentional because he did not intend the harm that resulted. According to the court:

> A participant in a game or sport assumes all of the risks incidental to that particular activity which are obvious and foreseeable. A participant does not assume the risk of injury from fellow players acting in an unexpected or unsportsmanlike way with a reckless lack of concern for others participating.

*Id.* at 42. See, also, *Novak v. Lamar Ins. Co.,* 488 So. 2d 739 (La. App. 1986), *writ denied* 491 So. 2d 23 (plaintiff first baseman was injured by defendant runner, who was racing for first base).

In *Ginsberg v. Hontas,* 545 So. 2d 1154 (La. App. 1989), the

plaintiff was injured as the result of a collision which occurred as the defendant runner attempted to slide into second base and the plaintiff second baseman attempted to tag the defendant. Holding that the plaintiff failed to establish that the defendant acted negligently, the court noted:

> The duty owed by the defendant in the instant matter is a common duty, the duty to act reasonably under the circumstances. In this softball game defendant owed plaintiff the duty to act reasonably, that is, to play fairly according to the rules of the game and to refrain from any wanton, reckless conduct likely to result in harm or injury to another.

*Id*. at 1155.

Adopting the rationale of the majority rule, we hold that a participant in a game involving a contact sport such as basketball is liable for injuries in a tort action only if his or her conduct is such that it is either willful or with a reckless disregard for the safety of the other player, but is not liable for ordinary negligence. The allegation as to ordinary negligence did not state a cause of action, and the trial court was correct in sustaining defendant's demurrer.

Plaintiff was going to offer the testimony of one Steven Lefler as an expert in the area of pickup basketball. Lefler claimed to have played 15,000 to 20,000 games of basketball of one style or another. According to an offer of proof made following the hearing on defendant's motion in limine and at commencement of the trial, Lefler would testify that he was thoroughly familiar with the safety rules and usages of basketball, that he had studied the depositions of the witnesses listed above, and that in his opinion the defendant was reckless in that he was running too fast without watching where he was going or caring where the plaintiff and other participants in the game were located. The defendant's motion was sustained. The court gave as its reason for such a ruling that the witness' understanding as to how he normally played pickup basketball was not relevant to whatever rules the participants on this day were following.

Generally, the admission of evidence from expert witnesses is a matter left to the discretion of the trial court, and its ruling

will be upheld absent an abuse of that discretion. *Kasper v. Carlson*, 232 Neb. 170, 440 N.W.2d 195 (1989); *Sanchez v. Derby*, 230 Neb. 782, 433 N.W.2d 523 (1989).

Neb. Rev. Stat. § 27-702 (Reissue 1985) provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Accordingly, as recognized in *State v. Trevino*, 230 Neb. 494, 432 N.W.2d 503 (1988), and *State v. Ammons*, 208 Neb. 812, 305 N.W.2d 812 (1981), expert testimony generally is admissible only if it will be of assistance to the jury in its deliberations and relates to an area not within the competency of ordinary citizens.

While a trial court may admit expert testimony if it believes such may assist the jury, it is not error to exclude such testimony relating to matters which are not complicated and which embrace matters of common knowledge. *Johannes v. McNeil Real Estate Fund VIII*, 225 Neb. 283, 404 N.W.2d 424 (1987). The trial court did not rule, contrary to plaintiff's assertion in his brief, that informal games of basketball do not have safety rules or usages. The gist of the court's ruling was that the jury was perfectly capable of determining for itself whether defendant acted with reckless disregard for the safety of the plaintiff.

The trial court did not abuse its discretion in excluding the testimony of Lefler.

We next deal with assignments of error Nos. 3, 4, and 5, dealing generally with the court's instructions relating to the definition of recklessness.

There is no prejudicial error in jury instructions which, when read together, correctly state the law, are not misleading, and adequately cover the issues. *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989); *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989).

The trial court instructed the jury on the issue of recklessness in the following manner:

> You are instructed that the standard for Defendant's

conduct is recklessness - a reckless disregard for the safety of the other player, i.e the Plaintiff. The term "recklessness" is conduct amounting to more than negligence. It is needlessness [sic] or indifference to the rights of others or of the consequences of one's act. It indicates an indifferent disregard for the rights of others or of the consequences.

The Defendant's conduct was in reckless disregard of the safety of the Plaintiff if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Reckless misconduct differs from negligence, in that the latter consists of mere inadvertance [sic], lack of skillfulness or failure to take precautions, while reckless misconduct involves a choice or adoption of a course of action either with knowledge of the danger or with knowledge of facts which would disclose this danger to a reasonable man.

Recklessness also differs in that it consists of intentionally doing an act with knowledge not only that it contains a risk of harm to others as does negligence, but that it actually involves a risk substantially greater in magnitude than is necessary in the case of negligence.

The language of the first paragraph appears to have been taken from Nebraska cases in which Iowa's guest statute was applied. See, *Peterson v. Dean*, 186 Neb. 716, 186 N.W.2d 107 (1971); *Cappellano v. Pane*, 178 Neb. 493, 134 N.W.2d 76 (1965). The second paragraph is taken from Restatement (Second) of Torts § 500 (1965). The third paragraph is taken from *Kabella v. Bouschelle*, 100 N.M. 461, 672 P.2d 290 (1983), and the fourth paragraph from *Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516 (10th Cir. 1976). See, also, the Restatement, *supra*, comment *g*.

Plaintiff objects to the instruction because of the inclusion of language instructing the jury that the defendant's conduct was

in reckless disregard of the safety of plaintiff if he "intentionally fails to do an act which it is his duty to the other to do" and that recklessness consists of "intentionally doing an act with knowledge." According to plaintiff, the jury was misled into believing the plaintiff had to prove that defendant acted with actual intent. As evidence that the jury was confused and misled, plaintiff emphasizes the fact that the jury sent a note to the judge requesting clarification of instruction No. 9, specifically asking, "Is acting intentionally included in the definition of reckless disregard?" It appears to be plaintiff's position that acting intentionally is not an element of recklessness. That is not correct.

The terms "wanton," "willful," and "reckless" have in practice been treated as meaning the same thing. According to Prosser and Keeton:

> The usual meaning assigned to "willful," "wanton," or "reckless" . . . is that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences.

Prosser and Keeton on the Law of Torts, *Negligence: Standard of Conduct* § 34 at 213 (5th ed. 1984). According to The Restatement, *supra* at comment *b*. at 588-89:

> Conduct cannot be in reckless disregard of the safety of others unless the act or omission is itself intended, notwithstanding that the actor knows of facts which would lead any reasonable man to realize the extreme risk to which it subjects the safety of others.

Looking at willful negligence and wanton negligence because Nebraska has no cases directly dealing with recklessness, this court has stated:

> "In order for an action to be willful or wanton, the evidence must prove that a defendant had *actual* knowledge that a danger existed and that the defendant *intentionally* failed to act to prevent harm which was reasonably likely to result. The term imparts knowledge and consciousness that injury is likely to result from the

act done or the omission to act, and a constructive intention as to the consequences. . . ." (Emphasis in original.) *Wicker v. City of Ord*, 233 Neb. 705, 712, 447 N.W.2d 628, 633 (1989), quoting *Guenther v. Allgire*, 228 Neb. 425, 422 N.W.2d 782 (1988).

The Restatement, *supra* at 587, defines reckless disregard of safety as follows:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or *intentionally* fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

(Emphasis supplied.)

It is somewhat puzzling why the failure to do an act is modified by "intentionally" whereas doing an act is not. This is particularly true in light of the Restatement (Second) of Torts § 500, comments *f.* and *g.* (1965), which are discussed in *Hackbart v. Cincinnati Bengals, Inc., supra* at 524, as follows:

> The Restatement of Torts Second, § 500, distinguishes between reckless and negligent misconduct. Reckless misconduct differs from negligence, according to the authors, in that negligence consists of mere inadvertence, lack of skillfulness or failure to take precautions; reckless misconduct, on the other hand, involves a choice or adoption of a course of action either with knowledge of the danger or with knowledge of facts which would disclose this danger to a reasonable man. Recklessness also differs in that it consists of intentionally doing an act with knowledge not only that it contains a risk of harm to others as does negligence, but that it actually involves a risk substantially greater in magnitude than is necessary in the case of negligence. The authors explain the difference, therefore, in the degree of risk by saying that the difference is so significant as to amount to a difference in kind.
>
> Subsection (f) also distinguishes between reckless

misconduct and intentional wrongdoing. To be reckless the *act* must have been intended by the actor. At the same time, the actor does not intend to cause the harm which results from it. It is enough that he realized, or from the facts should have realized, that there was a strong probability that harm would result even though he may hope or expect that this conduct will prove harmless. Nevertheless, existence of probability is different from substantial certainty which is an ingredient of intent to cause the harm which results from the act.

Therefore, recklessness exists where a person knows that the act is harmful but fails to realize that it will produce the extreme harm which it did produce. It is in this respect that recklessness and intentional conduct differ in degree.

We therefore adopt the following as a definition of recklessness: Recklessness is the disregard for or indifference to the safety of another or for the consequences of one's act. Conduct is in reckless disregard to the safety of another if the actor intentionally does an act, or intentionally fails to do an act which it is his or her duty to another to do, knowing or having reason to know of facts which would lead a reasonable person to realize not only that his or her conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his or her conduct negligent. Recklessness differs from intentional wrongdoing in that while the act must be intended by the actor in order to be considered reckless, the actor does not intend to cause the harm which results from the act.

Although the court's instruction which was given was somewhat lengthy, it contained a correct statement of the law. Plaintiff's claim that the instruction was misleading because the jury asked for clarification is without avail. "The meaning of an instruction, not the phraseology, is the important consideration, and a claim of prejudice will not be sustained when the meaning of the instruction is reasonably clear." *Landmesser v. Ahlberg*, 184 Neb. 182, 187, 166 N.W.2d 124, 128 (1969). Such was the case here.

Plaintiff next raises the question as to whether contributory

negligence is a defense against a cause of action based on reckless behavior. Defendant in his answer alleged that plaintiff was guilty of contributory negligence more than slight in failing to keep a proper lookout and by failing to control his body in such a manner as to avoid an impact with defendant.

However, it is not necessary for us to discuss that legal proposition. Even assuming that contributory negligence can be a defense in a case such as this, the record does not support such a finding. The plaintiff testified that he was standing still when pushed by the defendant. The defendant stated that he was not particularly aware of the plaintiff's presence. That was all of the evidence in the record, and it was not sufficient to permit a finding by the jury of absence of lookout or lack of control on the part of the plaintiff. Jury instructions should be confined to the issues found in the pleadings and which find support in the evidence. Generally, it is error to submit to the jury an issue which is not sustained by the evidence. *Steed v. Oak Ridge Equestrian Ctr.*, 224 Neb. 792, 401 N.W.2d 495 (1987). The trial court committed prejudicial error in submitting that issue.

The judgment of the district court is reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

WHITE, J., not participating.