JUSTICE KINSER,
concurring in part and dissenting in part.
I agree with the majority opinion except with regard to the issue of consent as it pertains to the intentional tort of battery. In my view, the second amended motion for judgment filed by the plaintiffs, Andrew W. Koffman, by his father and next friend, and Richard Koffman and Rebecca Koffman, individually, was insufficient as a matter of law to state a claim for battery.**
Absent fraud, consent is generally a defense to an alleged battery. See Banovitch v. Commonwealth, 196 Va. 210, 219, 83 S.E.2d 369, *18 375 (1954); Perkins v. Commonwealth, 31 Va. App. 326, 330, 523 S.E.2d 512, 513 (2000); People ex rel. Arvada v. Nissen, 650 P.2d 547, 551 (Colo. 1982); Bergman v. Anderson, 411 N.W.2d 336, 339 (Neb. 1987); Willey v. Carpenter, 23 A. 630, 631 (Vt. 1891); Restatement (Second) of Torts § 13, cmt. d (1965). In the context of this case, “[t]aking part in a game manifests a willingness to submit to such bodily contacts or restrictions of liberty as are permitted by its rules or usages.” Restatement (Second) of Torts § 50, cmt. b (1965), quoted in Thompson v. McNeill, 559 N.E.2d 705, 708 (Ohio 1990); see also Kabella v. Bouschelle, 672 P.2d 290, 292 (N.M. Ct. App. 1983). However, participating in a particular sport “does not manifest consent to contacts which are prohibited by rules or usages of the game if such rules or usages are designed to protect the participants and not merely to secure the better playing of the game as a test of skill.” Restatement (Second) of Torts § 50, cmt. b (1965) quoted in Thompson, 559 N.E.2d at 708; see also Kabella, 672 P.2d at 292.
The thrust of the plaintiffs’ allegations is that they did not consent to “Andy’s participation in aggressive contact tackling by the adult coaches” but that they consented only to Andy’s engaging “in a contact sport with other children of like age and experience.” They further alleged that the coaches had not previously tackled the players when instructing them about the rules and techniques of football.
It is notable, in my opinion, that the plaintiffs admitted in their pleading that Andy’s coach was “responsible ... for the supervision, training and instruction of the defensive players.” It cannot be disputed that one responsibility of a football coach is to minimize the possibility that players will sustain “something more than slight injury” while playing the sport. Vendrell v. School District No. 26C, Malheur County, 376 P.2d 406, 413 (Ore. 1962). A football coach cannot be expected “to extract from the game the body clashes that cause bruises, jolts and hard falls.” Id. Instead, a coach should ensure that players are able to “withstand the shocks, blows and other rough treatment with which they would meet in actual play” by making certain that players are in “sound physical condition,” are issued proper protective equipment, and are “taught and shown how to handle [themselves] while in play.” Id. The instruction on how to handle themselves during a game should include demonstrations of proper tackling techniques. Id. By voluntarily participating in football, Andy and his parents necessarily consented to instruction by the *19 coach on such techniques. The alleged battery occurred during that instruction.
The plaintiffs alleged that they were not aware that Andy’s coach would use physical force to instruct on the rules and techniques of football since neither he nor the other coaches had done so in the past. Surely, the plaintiffs are not claiming that the scope of their consent changed from day to day depending on the coaches’ instruction methods during prior practices. Moreover, they did not allege that they were told that the coaches would not use physical demonstrations to instruct the players.
Additionally, the plaintiffs did not allege that the tackle itself violated any rule or usage of the sport of football. Nor did they plead that Andy could not have been tackled by a larger, physically stronger, and more experienced player either during a game or practice. Tackling and instruction on proper tackling techniques are aspects of the sport of football to which a player consents when making a decision to participate in the sport.
In sum, I conclude that the plaintiffs did not sufficiently plead a claim for battery. We must remember that acts that might give rise to a battery on a city street will not do so in the context of the sport of football. See Thompson, 559 N.E.2d at 707. We must also not blur the lines between gross negligence and battery because the latter is an intentional tort. I agree fully that the plaintiffs alleged sufficient facts to proceed with their claim for gross negligence.
For these reasons, I respectfully concur, in part, and dissent, in part, and would affirm the judgment of the circuit court sustaining the demurrer with regard to the claim for battery.

 Although the circuit court sustained the demurrer with regard to the alleged battery on the basis that an intention to batter and inflict injury on Andy could not be inferred from the alleged facts, the majority does not address that holding. Since the majority discusses only the issue of consent, I confine my dissent to that question.