257 N.J. Super. 374 (1992)
608 A.2d 465
MICHAEL CRAWN, PLAINTIFF,
v.
JOHN CAMPO, DEFENDANT.
Superior Court of New Jersey, Law Division Morris County.
Decided April 15, 1992.
*375 Albert Fershing, for plaintiff (Shurkin & Fershing, attorneys.)
James DeMarzo, for defendant (O'Donnell McCord Helfrich & Bangiola, attorneys.)
HARPER, J.S.C.
During the course of trial in the above-captioned matter, the court rendered an opinion on the defendant's motion to dismiss the complaint at the close of plaintiff's case. Because it is *376 important to establish principles of liability in contact sports injury cases, this court has reduced its oral opinion to writing.
On May 1, 1988, the plaintiff, Michael Crawn, and the defendant, John Campo, were participants in a "pick up" softball game. There were no coaches or umpires officiating at this game. The game was not conducted under the auspices of any organized group or league. The rules of the game were acknowledged to be the "general rules of softball" with certain modifications. As a matter of custom, the rules of the game were not put in writing but were simply agreed upon orally by the players.
At one point during this softball game, the plaintiff was playing the position of catcher while the defendant (a base runner) was making his way from third base to home plate. As the defendant approached the plate, he either slid or lowered his shoulder and collided with the plaintiff/catcher who was standing near home plate. As a result of this collision, the plaintiff contends that he was injured and sustained a torn cartilage in his knee.
A dispute exists as to whether a "no sliding rule" was applicable to this game as well as a rule prohibiting intentional contact by a base runner with a fielder. According to the plaintiff, who was playing the position of catcher, sliding and intentional contact with a fielder were against the agreed upon rules of the game. Furthermore, the defendant's actions were allegedly unsportsmanlike, unexpected and done with a reckless lack of concern for the other participants in the softball game. Thus, the plaintiff alleges that the defendant was violating the rules of the game when he slid into home plate.
On the other hand, the defendant denies that he breached the rules of the game because he contends there were no rules prohibiting sliding or intentional contact with a fielder. Under these circumstances, the defendant/base runner asserts that the base line belonged to the runner and the plaintiff/catcher assumed the risk of contact by placing himself in a position *377 where a base runner's sliding could result in a collision between these two players. Therefore, the defendant averred that he was not breaching any of the established rules.
On March 9, 1989, the plaintiff brought suit against the defendant alleging negligence, recklessness, and intent to harm. On June 1, 1989, the defendant filed an answer denying liability and raising the defenses of assumption of risk and comparative negligence. Once brought to trial, the defendant moved to have the complaint dismissed at the end of the plaintiff's case, claiming that the plaintiff failed to make a prima facie case proving that the defendant was liable for the plaintiff's injury.
During the oral argument on the motion to dismiss, counsel focused on the issue of the duty of care owed to participants in a sporting event such as a softball game. For the reasons that follow, the court holds that between players in such sporting events, only those injuries caused by intentional conduct or by acting in reckless disregard of the safety of others will give rise to a cause of action. Liability will not be found to exist where ordinary negligence caused the injuries.
There is only one reported case decision in this jurisdiction which discusses the standard of care to be applied in contact sports injury cases. That is the case of Thomas v. Barlow, 5 N.J. Misc. 764, 138 A. 208 (Supreme Court 1947) in which the court applied an intentional tort standard (assault and battery) and reversed a lower court's decision which found a basketball player liable for injuries to another participant arising out of the game. The defendant had allegedly struck the plaintiff in the jaw with his fist thereby fracturing plaintiff's jawbone. The plaintiff claimed it was deliberate, but the proofs rose only to the level of accidental contact according to the Appellate Court's holding which overruled the trial court. This case, though the seminal decision in New Jersey, must be examined against the great weight of case authority in the various states *378 in order to assess its efficacy today and the applicability of its rationale to the case sub judice.
The Supreme Court of Ohio in its recent decision in Marchetti v. Kalish, 53 Ohio St.3d 95, 559 N.E.2d 699, 700-01 (1990) discusses the various standards which have been made applicable to recreational and sports activities in determining whether liability will be imposed for injuries:
Legal commentators have identified three distinct standards which are used by some jurisdictions to permit recovery for injuries received during sports and recreational activities: (1) intentional tort, i.e., assault and battery; (2) willful or reckless misconduct; and (3) negligence. See Note, Civil Liability of Athletics  Professional Football Player May Have Tort Claim For Injuries Intentionally Inflicted During Football Game (1980), 84 Dick.L.Rec. 253; Comment, Civil Liability: An Alternative to Violence in Sporting Events (1988), 15 Ohio N.U.L.Rev. 243; Note, Participant In Athletic Competition States Cause of Action For Injuries Against Other Participant (1977), 42 Mo.L.Rev. 347. However, courts traditionally have not been inclined to allow a cause of action for injuries received during participation in such activities. In Kuehner v. Green, (Fla. 1983), 436 So.2d 78, 81, Justice Boyd, concurring specially, noted that
"[h]istorically, the courts have been reluctant to allow persons to recover money damages for injuries received while participating in a sport, especially a contact sport, unless there was a deliberate attempt to injure. In denying recovery, the courts have often explained that a person who participates in a sport assumes the risk that he or she may be injured. Only recently have some courts allowed a sport participant to recover damages for injuries resulting from unintentional but reckless misconduct. See Hackbart v. Cincinnati Bengals, Inc., 601 F.2d 516 (10th Cir.), cert. denied, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979); Nabozny v. Barnhill, 31 Ill. App.3d 212, 334 N.E.2d 258 (1975). These courts reasoned that a sport participant does not assume the risk of injuries resulting from bodily contact uncustomary to or prohibited by the rules of the particular sport."
Likewise, while allowing a recovery for a sports injury based on intentional tort, a Michigan court has stated that "[p]articipation in a game involves a manifestation of consent to those bodily contacts which are permitted by the rules of the game. Restatement of Torts, 2d, Sect. 50, comment b. However, there is a general agreement that an intentional act causing injury, which goes beyond what is ordinarily permissible, is an assault and battery for which recovery may be had." Overall v. Kadella, 138 Mich. App. 351, 361 N.W.2d 352, 355 (1984). Thus, courts generally allow a cause of action for injuries sustained in recreational or sports activities only under reckless or intentional tort theories.
The majority of jurisdictions which have considered the standard of care imposed on players in such sporting events have concluded that personal injury claims arising out of these *379 athletic competitions should be measured against a standard requiring one to act in reckless disregard for the safety of others in order for claims to be meritorious. Adopting this standard, which requires more than just simple negligence, comports with the policy that "[v]igorous and active participation in sporting events should not be chilled by the threat of litigation." Kabella v. Bouschelle, 100 N.M. 461, 672 P.2d 290, 294 (App. 1983).
In Kabella, the New Mexico Court of Appeals looked to the Restatement (Second) of Torts, Sect. 500 to distinguish between reckless conduct and negligent conduct. The Restatement (Second) of Torts, Sect. 500, provides:
The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.
Moreover, Kabella cited to Hackbart v. Cincinnati Bengals, Inc., 601 F.2d 516, 524 (10th Cir.1979), cert. denied, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979), for the proposition that "[r]ecklessness also differs [from negligence] in that it consists of intentionally doing an act with knowledge not only that it contains a risk of harm to others as does negligence, but that it actually involves a risk substantially greater in magnitude than is necessary in the case of negligence."
The plaintiff in Kabella was injured by defendant in an informal game of tackle football. The lower court granted summary judgment and dismissed the complaint, which was based solely on a negligence theory. Since the plaintiff failed to plead a cause of action for reckless conduct or for an intentional tort, the Appellate Court affirmed the lower court's decision to grant summary judgment in favor of the defendant.
In Picou v. Hartford Insurance Co., 558 So.2d 787 (La. App. 5th Cir.1990), the Court of Appeals of Louisiana affirmed the lower court's holding that the defendant, a base runner in a softball game who slid in or dove into second base, could not be *380 held liable in negligence to the second base player who suffered an ankle injury as a result of a collision between these two players. In arriving at its decision, the Court in Picou discussed the defendant's duty to act reasonably, to play fairly in accordance with the rules of the game and to avoid any wanton or reckless conduct which would most likely result in injury to the other players. Once this duty has been defined, the Court opined that the plaintiff (the second base player) must prove by a preponderance of the evidence that the defendant violated this duty and his unreasonable actions were the cause of the plaintiff's injuries. The Picou court was convinced that the defendant did not breach this duty by acting negligently, nor was there any evidence that the defendant deliberately collided with the plaintiff. There was just vigorous, competitive play. Thus, liability did not attach.
Further support for adopting the majority rule that more than simple negligence must be proven to allow recovery for injuries received in athletic activities can be found in Connell v. Payne, 814 S.W.2d 486 (Tex. App. 1991). In Connell, the Court held "that for a plaintiff to prevail in a cause of action for injuries sustained while participating in a competitive contact sport, the plaintiff must prove the defendant acted "recklessly" or "intentionally" as the Restatement of Torts defines those terms." Connell, 814 S.W.2d at 489. Once again, the cited standard for liability requires more than a showing of mere negligence.
Various other jurisdictions have adopted and applied standards greater than ordinary negligence. See Marchetti v. Kalish, supra, (emphasizing that a sports participant does not assume the risk of an injury as a result of contact not expected or strictly prohibited by the rules of that game. "Thus, courts generally allow a cause of action for injuries sustained in recreational or sports activities only under reckless or intentional tort theories." Marchetti, 559 N.E.2d at 701); Gauvin v. Clark, 404 Mass. 450, 537 N.E.2d 94 (1989) ("The majority of jurisdictions which have considered this issue have concluded *381 that personal injury cases arising out of an athletic event must be predicated on reckless disregard of safety." Gauvin, 537 N.E.2d at 97); Hanson v. Kynast, 38 Ohio App.3d 58, 526 N.E.2d 327 (1987) (in avoiding the adoption of a negligence standard, which would burden the "free and vigorous participation in sports", courts have established a duty founded on an intentional or reckless standard. Hanson, 526 N.E.2d at 330-31 (citing Nabonzy v. Barnhill, 31 Ill. App.3d 212, 334 N.E.2d 258, 260 (1975)).
Against this background, this court joins the authorities cited and holds that in order to prevail, the plaintiff must prove by a preponderance of the evidence that the defendant acted in reckless disregard of the safety of others or intentionally and as a result of his conduct, the plaintiff was injured. The defendant will not be found liable if his actions amounted to nothing more than simple negligence.
The question of whether defendant intentionally sought to harm plaintiff need not be addressed in the case sub judice because the count of the complaint alleging an intentional tort was voluntarily withdrawn by the plaintiff prior to this motion. However, there is definitely a question of fact concerning whether the defendant's conduct was reckless when he slid into home plate or lowered his shoulder and deliberately contacted the catcher. More particularly, a factual dispute exists with respect to what were the agreed upon rules of the game and whether sliding or intentional contact with a fielder was permitted.
Therefore, the defendant's motion to dismiss the complaint is granted as to Count One (negligence) and denied as to Count Two (the count implicating the reckless disregard standard). The jury shall be instructed to weigh the facts presented and to determine whether the defendant's conduct amounts to acting in reckless disregard of the safety of others particularly the plaintiff and whether that conduct caused the plaintiff's injuries.