Robert F. LESTINA, Plaintiff-Respondent,

v.

WEST BEND MUTUAL INSURANCE COMPANY and Leopold
Jerger, Defendants-Appellants.

Supreme Court

*No. 91-3030.  Oral argument March 3, 1993.—Decided June
16, 1993.*

(Also reported in 501 N.W.2d 28.)

For the defendants-appellants there were briefs (in the court of appeals) by *William J. Evans* and *Law Offices of James J. Pauly,* West Bend and oral argument by *Mr. Evans.*

For the plaintiff-respondent there was a brief (in the court of appeals) by *Dean P. Laing* and *O'Neil, Cannon & Hollman, S.C.,* Milwaukee and oral argument by *Mr. Laing.*

SHIRLEY S. ABRAHAMSON, J. This is an appeal from a judgment of the circuit court for Waukesha County, Patrick L. Snyder, Circuit Judge. The case comes to this court on certification by the court of appeals pursuant to sec. 809.61, Stats. 1991–92. The sole question presented by the certification is "what is the standard of care in Wisconsin for a [recreational] sports player who is alleged to have caused injury to another player during and as part of the [recreational team contact sports] competition." The circuit court determined that negligence was the governing legal standard. For the reasons set out below, we conclude that the rules of negligence govern liability for injuries incurred during recreational team contact sports. Accordingly, we affirm the judgment of the circuit court.

## I.

Robert F. Lestina, the plaintiff, filed this personal injury tort action against Leopold Jerger, the defendant, and Jerger's homeowner's insurer, West Bend Mutual Insurance Company, after the plaintiff was injured in a collision with the defendant. The collision occurred during a recreational soccer match organized by the Waukesha County Old Timers League, a recreational league for players over the age of 30.

The plaintiff (45 years of age) was playing an offensive position for his team and the defendant (57 years of age) was the goalkeeper for the opposing team on April 20, 1988, when the injury occurred. Shortly before the plaintiff was injured, he had scored the first goal of the game. After his goal the plaintiff regained possession of the ball and was about to attempt a second goal when the defendant apparently ran out of the goal area and collided with the plaintiff. The plaintiff asserted that the defendant "slide tackled" him in order to prevent him

from scoring.[1] Although slide tackles are allowed under some soccer rules, this league's rules prohibit such maneuvers to minimize risk of injury. The defendant claimed that the collision occurred as he and the plaintiff simultaneously attempted to kick the soccer ball.

The plaintiff seriously injured his left knee and leg in the collision and commenced this action, alleging that the defendant's conduct was both negligent and reckless. The defendant moved for summary judgment on the negligence issue, asserting that the plaintiff's allegations of negligence were insufficient as a matter of law to state a cause of action for injuries sustained during a recreational team contact sports competition. Relying on *Ceplina v. South Milwaukee School Board,* 73 Wis. 2d 338, 243 N.W.2d 183 (1983), the circuit court denied the summary judgment motion.

Thereafter the parties agreed to limit the trial to the issue of negligence and to preserve the right to appeal regarding the appropriateness of the negligence standard. The parties also stipulated the amount of damages to be awarded the plaintiff on the basis of the jury determination of the defendant's negligence.

After the jury returned a unanimous verdict finding the defendant 100% causally negligent, the defendant filed motions raising, among other issues, the question whether negligence was the appropriate legal standard. The circuit court denied the post-verdict motions and entered judgment in favor of the plaintiff. The defendant appealed one issue to the court of appeals—whether negligence was the appropriate legal standard in this case. The court of appeals certified the cause to this court.

---

[1] A player "slide tackles" by sliding on his or her knee, with one foot forward, across the front of another player. The objective is to dispossess the opponent of the ball.

## II.

This case presents a single question of law: is negligence the standard governing the conduct of participants in recreational team contact sports? We review this question of law independently of the decision of the circuit court.

Relying on *Ceplina v. South Milwaukee School Board,* 73 Wis. 2d 338, 243 N.W.2d 183 (1976), the circuit court held that negligence was the controlling standard. We do not view the *Ceplina* case as persuasive precedent. In *Ceplina,* two sixth grade students were on the same team in a playground softball game. The complainant was injured when her teammate unintentionally struck her in the face with a softball bat during the game. She brought an action in negligence against the batter, the school authorities, and the insurers. The batter moved for summary judgment, claiming that he owed no duty to the complainant to exercise care in swinging the bat because the danger of being struck under these circumstances was open and obvious to the complainant. The trial court declined to grant summary judgment, and this court affirmed the trial court's order.

The *Ceplina* court rejected the batter's absence of duty defense.[2] The court concluded that the complainant had stated a cause of negligence which gave rise to a question for the jury "whether either or both of the actors were causally negligent." 73 Wis. 2d at 344.

[2] The court stated that the duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others. The court concluded that the complainant's appreciation of the dangers inherent in a swinging bat was, "under the circumstances of this 'ordinary negligence case' " properly accommodated by the principles of contributory negligence. 73 Wis. 2d at 343.

While the *Ceplina* court considered the batter's duty and "open and obvious danger" argument within the context of the complainant's negligence claim and referred to this sport-related injury case as an ordinary negligence case, the opinion must be put in perspective. The court considered only whether the circuit court erred in refusing to grant summary judgment on the claim that the batter owed no duty because the danger of being struck by a bat was an open and obvious danger. 73 Wis. 2d at 340-41. The *Ceplina* court was not asked to, and did not, evaluate the applicability of the negligence standard to a sports-related injury.[3] Whether negligence was the appropriate standard for gauging a teammate's conduct was not briefed or presented to the court for decision. Under these circumstances, *Ceplina* cannot be viewed as persuasive precedent on the issue in the case at bar. We therefore examine anew whether negligence is the appropriate standard in this case.

Courts in other jurisdictions have applied three divergent legal theories to uphold actions for sports-related injuries: 1) intentional torts, 2) willful or reckless misconduct, and 3) negligent conduct. See generally Raymond L. Yasser, *Liability for Sports Injuries,* in Law of Professional and Amateur Sports (Gary A. Uberstine ed., 1992) at sec. 14.01.

Courts have historically been reluctant to allow participants in contact sports to recover money damages for injuries, absent a deliberate attempt to injure. The intentional tort in a recreational team contact sport is assault and battery. A battery is the intentional, unprivileged, harmful or offensive touching of a person by another.[4] Both parties agree that a player in a recreational team contact sport should be liable for an inten-

---

[3] *See* vol. 3258 *Appendices and Briefs,* 73 Wis. 2d 318-400.
[4] "Restatement (Second) of Torts sec. 13 (1965).

tional tort. Neither party urges us to hold that a player should be held liable only for intentional torts. The defendant asks the court to adopt the recklessness standard. The plaintiff urges that the negligence standard is appropriate.

Several courts have held that recklessness is the appropriate standard to apply in personal injury actions between participants in recreational team contact sports. From the various formulations courts have used to define reckless conduct, recklessness apparently falls somewhere on a continuum between an intentional act and an act of negligence. The Restatement (Second) of Torts (1965) describes recklessness as acting without intent to inflict the particular harm but in a manner which is so unreasonably dangerous that the person knows or should know that it is highly probable that harm will result.[5]

---

The *Restatement (Second) of Torts* (1965) addresses sports injuries only in the context of intentional torts and in the context of apparent consent to an intentional invasion. Comment b to sec. 50 describes the touching to which a player willingly submits by taking part in a game. The full text of the comment is as follows:

> *b. Taking part in a game.* Taking part in a game manifests a willingness to submit to such bodily contacts or restrictions of liberty as are permitted by its rules or usages. Participating in such a game does not manifest consent to contacts which are prohibited by rules and usages of the game if such rules and usages are designed to protect the participants and not merely to secure the better playing of the game as a test of skill. This is true although the player knows that those with or against whom he is playing are habitual violators of such rules.

[5] Section 500 of the Restatement states:

> "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize not only that his

*Nabozny v. Barnhill,* 31 Ill. App. 3d 212, 334 N.E.2d 258, 261 (1975), is the lead case establishing that "a player is liable for injury in a tort action if his conduct is such that it is either deliberate, willful or with reckless disregard for the safety of the other player so as to cause injury to that player."[6]

conduct creates an unreasonable risk of physical harm to another, but also such risk is substantially greater than that which is necessary to make his conduct negligent."

[6] Commentators have observed that it is not clear from the *Nabozny* opinion exactly what legal standard the court intended to announce. Charles E. Spevacek, *Injuries Resulting from Nonintentional Acts in Organized Contact Sports: The Theories of Recovery Available to the Injured Athlete,* 12 Ind. L. Rev. 687, 701-02 (1979) (the *Nabozny* court "enunciated nothing more than an ordinary negligence standard of conduct, narrowly tailored to further the policy considerations unique to the activity to which it is applied."); Lynn A. Goldstein, *Participant's Liability for Injury to a Fellow Participant in an Organized Athletic Event,* 53 Chi.-Kent L. Rev. 97, 105 (1976) ("it is unclear from the language used what standard of conduct should be applied . . . . One interpretation is that *Nabozny* enunciates an ordinary negligence standard of conduct.").

The claim pleaded in the *Nabozny* case was one of ordinary negligence. The court, moreover, considered whether the injured player had been contributorily negligent, a defense which would not have ordinarily been available in an action based on reckless conduct. 334 N.E.2d at 261.

Other commentators have viewed *Nabozny* as setting forth a recklessness standard. *See, e.g.,* Raymond L. Yasser, *Liability for Sports Injuries,* in Law of Professional and Amateur Sports (Gary A. Uberstine ed., 1992), at sec. 14.01 [4], p. 14-5.

Cases after *Nabozny,* including an Illinois case, have interpreted *Nabozny* as adopting a recklessness standard. *See, e.g., Gauvin v. Clark,* 404 Mass. 450, 537 N.E.2d 94 (1989); *Dotzler v. Tuttle,* 234 Neb. 176, 449 N.W.2d 774 (1990); *Oswald v. Township High School District,* 84 Ill. App. 3d 723, 406 N.E.2d 157

Like the present case, *Nabozny* arose out of a soccer match where the litigants were members of opposing high school teams. The complainant, playing the goal position and having just captured the ball, was crouched in the goal area when the tortfeasor kicked him in the head. Witnesses testified at trial that the tortfeasor had an opportunity to turn away and avoid kicking the complainant and that the tortfeasor's action violated the rules under which the game was being played.

The *Nabozny* court adopted a recklessness standard, rather than a negligence standard, believing that recklessness strikes the proper balance between freeing active and vigorous participation in recreational team contact sports from the chilling effect of litigation and providing a right of redress to an athlete injured through the fault of another. On the one hand, wrote the court, care must be taken not to inhibit free and active participation in recreational team contact sports. Threatening participants with possible liability for injuries might make them reluctant to compete. On the other hand, the court also recognized that tort law condemns unreasonably dangerous behavior and that the playing field should not provide license to engage in unreasonably dangerous behavior. Making the balance, the *Nabozny* court reasoned that public policy supported the application of the recklessness standard to organized athletics. "The court believes that the law should not place unreasonable burdens on the free and vigorous participation in sports by our youth. However, we also believe that organized, athletic competition does not exist in a vacuum. Rather, some of the restraints of civilization must accompany every athlete onto the playing field. One of the educational benefits of organized athletic competition to our

(1980); *Kabella v. Bouschelle,* 100 N.M. 461, 672 P.2d 290 (Ct. App. 1983).

909

youth is the development of discipline and self control." 334 N.E.2d at 260.

The Massachusetts Supreme Judicial Court has similarly adopted the recklessness standard, explaining the policy considerations as follows:

> Allowing the imposition of liability in cases of reckless disregard of safety diminishes the need for players to seek retaliation during the game or future games . . .. Precluding the imposition of liability in cases of negligence without reckless misconduct furthers the policy that "[v]igorous and active participation in sporting events should not be chilled by threats of litigation." *Gauvin v. Clark*, 537 N.E.2d 94, 97 (Mass. 1989) (citations omitted).

Several other courts have adopted the recklessness standard, often adopting the policy considerations expressed in *Nabozny*.[7] One commentator has discerned

---

[7] *See, e.g., Gauvin v. Clark*, 404 Mass. 450, 537 N.E.2d 94 (1989) (applying reckless disregard of safety standard to injury arising in college hockey game); *Ross v. Clouser*, 637 S.W.2d 11 (Mo. 1982) (applying "recklessness" standard to injury arising from church picnic softball game); *Dotzler v. Tuttle*, 234 Neb. 176, 449 N.W.2d 774 (1990) (applying willful or reckless disregard of safety standard to injury arising in a "pick-up" basketball game); *Marchetti v. Kalish*, 53 Ohio St. 3d 95, 559 N.E.2d 699 (1990) (applying reckless standard to injury arising in "kick the can" game); *Oswald v. Township High School Dist. No. 214*, 84 Ill. App. 3d 723, 406 N.E.2d 157 (1980) (applying *Nabozny* "deliberate, willful or reckless disregard" standard to injury in high school gym class basketball game); *Picou v. Hartford Ins. Co.*, 558 So.2d 787 (La. Ct. App. 1990) (applying reckless standard to injury in softball game); *Crawn v. Campo*, 257 N.J.Super. 374, 608 A.2d 465 (1992) (applying reckless disregard of safety of others to injury in "pick-up" softball game); *Kabella v. Bouschelle*, 100 N.M. 461, 672 P.2d 290 (Ct. App. 1983) (disallowing claim for negligence in injury in recreational football game, relying on

a judicial trend toward holding sports-related injuries actionable only "if the aggrieved person demonstrates gross negligence or reckless disregard by the defendant." Mel Narol, *Sports Torts: Emerging Standards of Care,* Trial, June 1990, at 20.

The plaintiff asks this court to disregard these cases. He argues that these courts established a recklessness standard because they recognize the doctrine of assumption of risk. These cases do not apply in Wisconsin, urges the plaintiff, because the assumption of risk doctrine is not recognized in Wisconsin; conduct which was formerly denominated assumption of risk may constitute contributory negligence. *McConville v. State Farm Mut. Auto Ins. Co.,* 15 Wis. 2d 374, 384, 113 N.W.2d 14 (1962). The plaintiff's analysis of the relationship between the recklessness standard and the assumption of the risk defense does not hold true for all the cases.[8] In any event we are not persuaded by these cases adopting the recklessness standard and dismissing claims based on negligence.

A third basis for actions for sports-related injuries is negligence. Negligence consists of failing to use that

---

*Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516 (10th Cir. 1979), *cert. denied,* 444 U.S. 931 (1979), which disallowed claim for negligence and permitted claim for recklessness in injury in professional football game); *Connell v. Payne,* 814 S.W.2d 486 (Tex. App. 1991) (applying reckless standard to injury in polo match).

[8] *Kabella v. Bouschelle,* 100 N.M. 461, 672 P.2d 290, 292 (1983), *Picou v. Hartford Ins. Co.,* 558 So.2d 787 (La. App. 1990) and *Connell v. Payne,* 814 S.W.2d 486 (Tex. App. 1991), for example, applied the recklessness standard even though the defense of assumption of risk had been subsumed in those states by the defense of contributory negligence.

degree of care which would be exercised by a reasonable person under the circumstances.[9]

Few sports cases can be found which have allowed a complainant to recover on proof of negligence.[10] One commentator has concluded that this scarcity results from fear that the imposition of liability in such cases would discourage participation in sports-related activities. Cameron J. Rains, *Sports Violence: A Matter of Societal Concern*, 55 Notre Dame Lawyer 796, 799 (1980). We do not agree that the application of the negligence standard would have this effect. We believe that the negligence standard, properly understood and applied, accomplishes the objectives sought by the courts adopting the recklessness standard, objectives with which we agree.

[9] *Osbourne v. Montgomery*, 203 Wis. 223, 231, 242-43, 372 N.W. 372 (1931); *Schuster v. St. Vincent Hospital*, 45 Wis. 2d 135, 140-141, 172 N.W.2d 421 (1969); Wis. J.I.—Civil 1005.

[10] While several cases adopt the negligence standard, most of these cases do not involve contact team sports. *See, e.g., Babych v. McRae*, 41 Conn. Sup. 280, 567 A.2d 1269 (Super. Ct. 1989) (applying negligence standard to injury in professional hockey game); *LaVine v. Clear Creek Skiing Corp.*, 557 F.2d 730 (10th Cir. 1977) (applying negligence standard to injury in collision between snow skiers); *Gray v. Houlton*, 671 P.2d 443 (Colo. Ct. App. 1983) (applying negligence standard to injury in collision between snow skiers); *Duke's GMC, Inc. v. Erskine*, 447 N.E.2d 1118 (Ind. Ct. App. 1983) (applying negligence standard to golf injury); *Bourque v. Duplechin*, 331 So. 2d 40 (La. Ct. App. 1976) (applying negligence standard to injury in softball game) (but see *Picou v. Hartford Ins. Co.*, 558 So. 2d 787 (La. Ct. App. 1990), adopting a reckless standard); *Jenks v. McGranaghan*, 299 N.Y.S.2d 228 (App. Div. 1969) (applying negligence standard to golf injury); *Gordon v. Deer Park School District*, 426 P.2d 824 (Wash. 1967) (applying negligence standard to softball spectator injured when struck on the head with a bat).

Because it requires only that a person exercise ordinary care under the circumstances, the negligence standard is adaptable to a wide range of situations. An act or omission that is negligent in some circumstances might not be negligent in others. Thus the negligence standard, properly understood and applied, is suitable for cases involving recreational team contact sports.

The very fact that an injury is sustained during the course of a game in which the participants voluntarily engaged and in which the likelihood of bodily contact and injury could reasonably be foreseen materially affects the manner in which each player's conduct is to be evaluated under the negligence standard. To determine whether a player's conduct constitutes actionable negligence (or contributory negligence), the fact finder should consider such material factors as the sport involved; the rules and regulations governing the sport; the generally accepted customs and practices of the sport (including the types of contact and the level of violence generally accepted); the risks inherent in the game and those that are outside the realm of anticipation; the presence of protective equipment or uniforms; and the facts and circumstances of the particular case, including the ages and physical attributes of the participants, the participants' respective skills at the game, and the participants' knowledge of the rules and customs. *Niemczyk v. Burleson,* 538 S.W.2d 737 (Mo. Ct. App. 1977).

Depending as it does on all the surrounding circumstances, the negligence standard can subsume all the factors and considerations presented by recreational team contact sports and is sufficiently flexible to permit the

'vigorous competition' that the defendant urges.[11] We see no need for the court to adopt a recklessness standard for recreational team contact sports when the negligence standard, properly understood and applied, is sufficient.

For the reasons set forth, we affirm the judgment of the circuit court.

*By the Court.*—The judgment of the circuit court is affirmed.

JON P. WILCOX, J. *(dissenting)*. I dissent because I conclude that the unique nature of contact sports calls for the application of a standard of care other than ordinary negligence. I disagree with the majority's basic premise that ordinary negligence is flexible enough to be applied under any set of circumstances. I believe application of the ordinary negligence standard in personal injury actions arising out of participation in contact sports will discourage vigorous and active participation in sporting events. I agree with the majority of jurisdictions that have considered this issue and concluded that personal injury cases arising out of athletic events must be predicated on reckless disregard of safety; an allegation of negligence is not sufficient to state a cause of action. *See* cases cited in the majority opinion at footnote 7; an excellent analysis of many of the cases adopt-

---

[11] The plaintiff refers the court to sec. 895.525, Stats. 1991-92, arguing that the legislature adopted a negligence standard for participants in recreational activities.

We do not address this issue. This statute was adopted after the date of injury in this case, and neither party argues the statute applies directly to this case. Furthermore the parties disagree whether recreational activity defined in sec. 895.525(2) includes team contact sports.

ing the majority rule is provided in *Dotzler v. Tuttle,* 449 N.W.2d 774 (Neb. 1990).

The plaintiff in *Gauvin v. Clark,* 537 N.W.2d 94 (Mass. 1989), was "butt-ended" in the abdomen with a hockey stick by the defendant. The court adopted the reckless disregard standard stating:

> The problem of imposing a duty of care on participants in a sports competition is a difficult one. Players, when they engage in sport, agree to undergo some physical contacts which could amount to assault and battery absent the players' consent. Restatement (Second) of Torts § 50 comment b (1965). The courts are wary of imposing wide tort liability on sports participants, lest the law chill the vigor of athletic competition. See, e.g., *Ross v. Clouser,* 637 S.W.2d 11, 14 (Mo.1982). Nevertheless, "some of the restraints of civilization must accompany every athlete on to the playing field." *Nabozny v. Barnhill,* 31 Ill.App.3d 212, 215, 334 N.E.2d 258 (1975). "[R]easonable controls should exist to protect the players and the game." *Ross v. Clouser, supra.*
>
> The majority of jurisdictions which have considered this issue have concluded that personal injury cases arising out of an athletic event must be predicated on reckless disregard of safety. See., e.g., *Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516, 524 (10th Cir.1979); *Nabozny v. Barnhill, supra; Ross v. Clouser, supra* at 14; *Kabella v. Bouschelle,* 100 N.M. 461, 465, 672 P.2d 290 (1983). Restatement (Second) of Torts § 500 comments e & g (1965).
>
> We adopt this standard. Allowing the imposition of liability in cases of reckless disregard of safety diminishes the need for players to seek retaliation during the game or future games. See *Hackbart v. Cincinnati Bengals, Inc., supra* at 521. Precluding the imposition of liability in cases of negligence without reckless misconduct furthers the policy that

915

"[v]igorous and active participation in sporting events should not be chilled by the threat of litigation." *Kabella v. Bouschelle, supra.*

*Gauvin,* 537 N.E.2d at 96-97.

In *Ross v. Clouser,* 637 S.W.2d 11 (Mo. 1982), the plaintiff third baseman sustained a severe knee injury during a church league softball game when the defendant runner collided with him outside the base path. Holding that the basis for a cause of action for personal injuries sustained during athletic competition must be recklessness rather than mere negligence, the court stated:

> Fear of civil liability stemming from negligent acts occurring in an athletic event could curtail the proper fervor with which the game should be played and discourage individual participation, yet it must be recognized that reasonable controls should exist to protect the players and the game. Balancing these seemingly opposite interests, we conclude that a player's reckless disregard for the safety of his fellow participants cannot be tolerated. If a plaintiff pleads and proves such recklessness, he may seek relief for injuries incurred in an athletic competition.

*Ross,* 637 S.W.2d at 14, *overruling Niemczyk v. Burleson,* 538 S.W.2d 737 (Mo. Ct. App. 1976).

Most courts that have applied the recklessness standard have defined that standard according to the Restatement (Second) of Torts, § 500 (1965), which provides:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical

harm to another, *but also that such risk is substantially greater than that which is necessary to make his conduct negligent.* (Emphasis added).

The court in *Kabella v. Bouschelle,* 672 P.2d 290 (N.M. Ct. App. 1983), further distinguished between reckless disregard and negligence as follows:

> Reckless misconduct differs from negligence, in that the latter consists of mere inadvertence, lack of skillfulness or failure to take precautions, while reckless misconduct involves a choice or adoption of a course of action either with knowledge of the danger or with knowledge of facts which would disclose this danger to a reasonable man. *Hackbart* also held that "[r]ecklessness also differs in that it consists of intentionally doing an act with knowledge not only that it contains a risk of harm to others as does negligence, but that it actually involves a risk substantially greater in magnitude than is necessary in the case of negligence." 601 F.2d at 524.

*Kabella,* 672 P.2d at 293.

I disagree with the majority's conclusion that "the negligence standard, properly understood and applied, accomplishes the objectives sought by the courts adopting the recklessness standard. . . ." Majority op. at 912. In the instant case, the standard ordinary negligence instruction was read to the jury. That instruction states:

> A person is negligent when he fails to exercise ordinary care. Ordinary care is the degree of care which the great mass of mankind ordinarily exercises under the same or similar circumstances. *A person fails to exercise ordinary care when, without intending to do any wrong, he does an act or omits a precaution* under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject him

917

or his property, or the person or property of another, to an unreasonable risk of injury or damage. (Emphasis added).

Wis. JI—Civil 1005. No instruction was given to the jury setting forth the factors it was to consider in properly applying the negligence standard to this case. The jurors were not instructed that, "[t]he very fact that an injury is sustained during the course of a game in which participants voluntarily engage and in which the likelihood of bodily contact and injury could reasonably be foreseen materially affects the manner in which each player's conduct is to be evaluated under the negligence standard." Majority op. at 913. While the defendant's action clearly violated a rule of the game, the action occurred during the heat of the game and should not form the basis of a negligence action.

The majority's affirmance of a judgment against the defendant indicates that the majority does not fully comprehend the objectives of other courts in adopting the recklessness standard. The policy objective of other courts is that "vigorous and active participation in sporting events should not be chilled by the threat of litigation." *Kabella*, 672 P.2d at 294. The unsound and chilling effect of subjecting participants of contact sports to liability for their ordinary negligence can be seen in the following description of the evidence a plaintiff, who was injured in a pickup basketball game, unsuccessfully wanted to offer:

> Plaintiff was going to offer the testimony of one Steven Lefler as an expert in the area of pickup basketball. Lefler claimed to have played 15,000 to 20,000 games of basketball of one style or another. According to an offer of proof made following the hearing on defendant's motion in limine and at commencement of the trial, Lefler would testify that he

918

was thoroughly familiar with the safety rules and usages of basketball, that he had studied the depositions of the witnesses listed above, and that in his opinion the defendant was reckless in that he was running too fast without watching where he was going or caring where the plaintiff and other participants in the game were located. The defendants motion was sustained.

*Dotzler,* 449 N.W.2d at 779.

The majority recognizes a judicial trend toward applying the reckless disregard standard in cases involving sports related injuries. Majority op. at 911. The majority chooses to disregard this trend and makes Wisconsin a distinct minority in applying the ordinary negligence standard to personal injury actions arising out of contact sports.

Participants in contact sports assume greater risks than do others involved in non-physical recreational activities. Because rule infractions, deliberate or unintentional, are virtually inevitable in contact games, I believe imposition of a different standard of conduct is justified where injury results from such contact. *Oswald v. Township High School Dist. No. 214,* 406 N.E.2d 157, 160 (Ill. App. Ct. 1980); *Connell v. Payne,* 814 S.W.2d 486, 488 (Tex. Ct. App. 1991). I would adopt the rationale of the majority rule and hold that a participant in a contact sport such as soccer is liable for injuries in a tort action only if his or her conduct is in reckless disregard for the safety of the other player, but is not liable for ordinary negligence. The allegation as to ordinary negligence did not state a cause of action and should have been dismissed.

919

I am authorized to state that Justices STEINMETZ and BABLITCH join in this dissent.