Scott SHAIN and Patricia Shain,
Plaintiffs-Appellants,†

UNITED HEALTHCARE INSURANCE COMPANY,
Involuntary-Plaintiff,

v.

RACINE RAIDERS FOOTBALL CLUB, INC., Capitol
Indemnity Corporation, Racine Youth Sports,
Inc., and ABC Insurance Company,
Defendants-Respondents.

Court of Appeals

*No. 2005AP3118. Oral argument October 10, 2006.
—Decided November 22, 2006.*

2006 WI App 257

(Also reported in 726 N.W.2d 346.)

† Petition to review filed.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs and oral argument of *Thomas W. Durkin*, of *Becker, French & DeMatthew*, of Racine.

On behalf of the defendants-respondents Racine Raiders Football Club, Inc. and Capitol Indemnity Corporation, the cause was submitted on the brief of *James S. Smith* and oral argument by *Wendy G. Gunderson* of *Steinhafel, Smith & Rowen, S.C.* of Brookfield.

On behalf of the defendants-respondents Racine Youth Sports, Inc. and ABC Insurance Co., the cause was submitted on the brief of *Rebecca Lizdas Ullenberg* and oral argument of *Jeaffrey Leavell* of *Jeaffrey Leavell, S.C.* of Racine.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J.   Scott Shain appeals from a summary judgment dismissing his negligence claim under the safe-place statute against the Racine Raiders Football Club, Inc., Racine Youth Sports, Inc., and their insurers.[1] Shain was injured while he coached a youth football team. In dismissing the action, the trial court likened Shain's role as a coach to that of a spectator under the so-called "Baseball Rule." As such, the court ruled the policy considerations underlying the "Baseball Rule" mandated that Shain's contributory negligence was greater than any negligence of the respondents as a matter of law. We agree and affirm.

---

[1] Shain's wife, Patricia, was a coplaintiff in the action, and she also appeals.

## BACKGROUND

¶ 2.　The material facts are undisputed. Shain, a licensed coach, was one of three or four assistant coaches of the Union Grove Badgers, a youth football team affiliated with Racine Youth Sports. The Badgers and the teams they played comprised eleven- and twelve-year-old participants.

¶ 3.　The Racine Raiders is a minor league football team that plays at Horlick Field in Racine. For at least the past ten years, the Raiders have scheduled Racine Youth Sports to provide half-time entertainment at one or two of the Raiders' games. The youth football teams scrimmage for approximately fifteen minutes during the half-time period. Many youth teams wanted to participate in this half-time event. To give six teams a chance to play, the playing field was divided up crosswise into three fields. Thus, the fields ran from sideline to sideline, rather than from end zone to end zone.

¶ 4.　There was no space in between the sidelines of the middle field and the fields on either side. As a result, the teams playing on the middle field shared common out-of-bounds lines with the teams playing on either side. The fields were not painted or marked with cones to designate the temporarily altered sidelines for this half-time activity, and no referees officiated. It is not clear which party bore responsibility for dividing the field in this manner.[2] Prior to coaching on the day of

---

[2] Shain's claim was grounded in negligence under the safe-place statute. As the circuit court noted, responsibility for arranging the scrimmage and configuring the field goes to apportionment of liability among the defendants, a question not germane to the summary judgment issue of whether Shain's contributory negligence exceeded that of the defendants as a matter of law.

his injury, Shain did not speak to anyone about the layout of the fields. The coaches and team members who were not playing stood on the "imaginary" sidelines. The Badgers, Shain's team, played on the middle field.

¶ 5. The team playing behind Shain's team was in a league or two above the Badgers, so that the players were older and probably in the 120– to 130–pound weight class. Two Badger coaches, Shain and another assistant, were at the game. The head coach was not there. During the scrimmage, Shain evidently led the coaching effort, positioning himself "on our side where we were supposed to be." Shain was aware that a game was going on behind him and that a player from another team could run into him.

¶ 6. About halfway into the scrimmage, as Shain watched his team run a play he had called, a player in the game behind him was tackled by another and the two collided with Shain, knocking him down and injuring his knee. At the time of his injury, Shain had coached for about eight years and knew that players commonly are pushed out of bounds at full speed. He himself had played informal football games when he was growing up. In addition, he had attended Raiders games for "very many years," and watched Racine Youth football scrimmages offered as half-time entertainment.

¶ 7. Shain filed suit against the Raiders, Racine Youth Sports and their insurers alleging negligence and a violation of Wis. Stat. § 101.11 (2003–04),[3] the safe-place statute. In their answers, the defendants denied liability and asserted various affirmative defenses, including Shain's contributory negligence. The Raiders

---

[3] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

moved for summary judgment on grounds that the "Baseball Rule" set out in *Powless v. Milwaukee County,* 6 Wis. 2d 78, 94 N.W.2d 187 (1959), and extended to hockey in *Moulas v. PBC Productions, Inc.,* 213 Wis. 2d 406, 570 N.W.2d 739 (Ct. App. 1997), *aff'd per curiam,* 217 Wis. 2d 449, 576 N.W.2d 929 (1998), bars recovery for injuries to sports spectators. Racine Youth Sports joined the motion. Shain opposed the motion, arguing that the "Baseball Rule" applies only to spectators and should not be expanded to include coaches. At the hearing on the motion, the circuit court acknowledged that Shain's case "doesn't track [the "Baseball Rule"] specifically" because Shain was a coach rather than a spectator. Nonetheless, the court held that the policies underlying *Powless* and *Moulas* applied, such that Shain was more negligent than the defendants as a matter of law. The court granted the defendants' motions for summary judgment. Shain appeals.

## STANDARD OF REVIEW

¶ 8. Summary judgment is appropriate when there is no material factual dispute and the moving party is entitled to judgment as a matter of law. *Mair v. Trollhaugen Ski Resort,* 2005 WI App 116, ¶ 5, 283 Wis. 2d 722, 699 N.W.2d 624, *aff'd,* 2006 WI 61, 291 Wis. 2d 132, 715 N.W.2d 598. The methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk,* 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751. This case also involves interpretation of the safe-place statute. We independently review both questions of statutory interpretation and a trial court's grant of summary judgment. *Mair,* 283 Wis. 2d 722, ¶ 5.

## DISCUSSION

¶ 9. Shain alleges that the Raiders and/or Racine Youth Sports failed to comply with the duty owed under WIS. STAT. § 101.11, the safe-place statute, by negligently organizing and conducting the half-time activities. The safe-place statute requires that "every owner of a . . . public building . . . shall . . . maintain such . . . public building as to render the same safe." Sec. 101.11(1).[4] An "owner" is any entity "having ownership, control or custody of any . . . public building . . . ." WIS. STAT. § 101.01(10).[5] "Safe" means "such freedom from danger to the life, health, safety or welfare of . . . frequenters, or the public . . . as the nature of the . . . public building . . . will reasonably permit." Sec. 101.01(13). "[T]he term 'safe' is relative, not absolute, and what is a safe place depends on the facts and conditions of each case." *Powless*, 6 Wis. 2d at 81. The reasonableness of particular safety measures is governed by the nature of the public place. *Id.* at 83.

---

[4] WISCONSIN STAT. § 101.11(1) imposes the same duty upon "[e]very employer." Racine Youth Sports asserts that Shain has waived a safe-place statute claim as to it because he failed to plead employer status or profit motive. Without deciding it, we address Shain's claim as though Racine Youth Sports satisfies the definition of "owner."

[5] Since Shain did not allege that either the Raiders or Racine Youth Sports own Horlick Field, we presume he is contending that liability under the statute rests upon the Raiders' or Racine Youth Sports' "control or custody" of the football field. *See Novak v. City of Delavan*, 31 Wis. 2d 200, 207, 143 N.W.2d 6 (1966); *see also Caldwell v. Piggly- Wiggly Madison Co.*, 32 Wis. 2d 447, 450, 145 N.W.2d 745 (1966) (legal liability under WIS. STAT. § 101.01(13) (then defining "owner"), may be predicated either on a right to present possession, control, or dominion of a location).

875

¶ 10. Specifically, Shain asserts that the Raiders and/or Racine Youth Sports negligently organized, maintained and conducted the half-time activities by conducting three scrimmages side-by-side, with no conventional sideline distance between the multiple fields. Shain opined that five yards of sideline would have safely separated the middle scrimmage field where the Badgers played from the sidelines of the games on the adjoining fields. Other than his opinion, Shain submitted no other affidavits or expert opinion on this question.

¶ 11. On appeal, as in the trial court, the parties' briefs focus on the "Baseball Rule" as articulated in *Powless*. This rule prohibits a spectator who is injured by a flying baseball from making a claim against the team or other responsible parties because he or she knowingly exposes himself or herself to the inherent risks. *Powless*, 6 Wis. 2d at 84–86; *Moulas*, 213 Wis. 2d at 418–19. In *Powless*, a spectator at a major league baseball game was hit in the head by a foul ball. *Powless*, 6 Wis. 2d at 79–80. The court held that the nature of the game and the common knowledge of frequent foul balls necessarily showed contributory negligence sufficient to bar recovery. *Id.* at 85–86. In *Moulas*, the "Baseball Rule" was expanded to include a spectator at a professional hockey game. *Moulas*, 213 Wis. 2d at 419. There, recovery was barred to a spectator knocked unconscious by an errant hockey puck because, since the risks associated with hockey should be known to the reasonable person attending a hockey game, and the plaintiff was aware and was warned of the risks, her contributory negligence was deemed at least one percent more than any of the defendants as a matter of law. *Id.* at 409, 420.

¶ 12. Our notice of oral argument broadened the scope of this case beyond the "Baseball Rule," directing

876

the parties to also address, among other cases and writings, *Lestina v. West Bend Mutual Insurance Co.*, 176 Wis. 2d 901, 501 N.W.2d 28 (1993). There, a majority of the supreme court held that the rules of ordinary negligence governed liability for injuries incurred by a participant in a recreational team contact sport. *Id.* at 903. This prompted discussion at oral argument about the legislative response to *Lestina* via the enactment of Wis. STAT. § 895.525(4m), which made short work of the *Lestina* holding by essentially adopting Justice Wilcox's dissent. Section 895.525(3) provides that the conduct of a participant who is injured while engaging in a recreational activity is measured by the law of contributory negligence. With the enactment of § 895.525(4m), the statute also now provides that a participant who inflicts an injury on another participant is liable "only if the participant who caused the injury acted recklessly or with intent to cause injury." Sec. 895.525(4m)(a). *See also* Wis JI—Civil 2020, "Sports Injury: Reckless or Intentional Misconduct."

¶ 13.   In response to our questioning at oral argument, the parties debated whether Shain was a spectator under the "Baseball Rule" or a participant under Wis. STAT. § 895.525(4m). If deemed to be a spectator, our task would be to determine whether to expand the reach of the "Baseball Rule" to include not only football, but coaches as well. If deemed to be a participant, our task would be to assess Shain's claim through the more exacting lens of § 895.525(4m), which requires a participant injured in a recreational sporting activity involving physical contact to prove recklessness or intent to cause injury.[6]

---

[6] We commend all three attorneys for contributing to a lively, robust and very informative oral argument. All counsel

¶ 14.    Although we have given the question much thought and debate, we ultimately conclude that it is unnecessary to peg Shain as a spectator under the "Baseball Rule" or as a participant under Wis. Stat. § 895.525(4m). The most accurate characterization, we think, is that which emerged at oral argument:   that Shain's role as a youth football coach is something of a hybrid between spectator and participant. Shain was something of a spectator because he observed the game, albeit with the critical eye of a coach. But he was also something of a participant because, although not fully immersed as a player, he was an integral part of the larger workings of his team, and he was on the field of action with his players.

¶ 15.    As the trial court aptly noted, if a spectator is held to know the risks attendant to mere presence at a sporting event, it surely follows that a coach is held to at least a similar standard. In fact, coaching takes the level of involvement a step further because it places the coach immediately adjacent to the field of action and within the zone of danger. As such, the coach is properly held to accept whatever contact is contemplated by the rules and customs of the game, including the appreciation of the attendant risk. Whether spectator or participant, no one knows better than a coach the risks inherent in a physical contact sport such as football.

¶ 16.    Conditions or conduct that might be viewed as dangerous in everyday life are integral and accepted as part of the sport itself. The very nature of football envisions and requires speed, force and, commonly, vigorous physical contact. Helmeted players in full

were well prepared and responsive to our questions. Moreover, counsel did not stubbornly adhere to positions that were of questionable merit, but, at the same time, properly stood their ground on their strong points.

protective gear skirmish in close proximity to an assortment of regularly garbed nonplayers: referees, photographers, ball boys, cheerleaders, members of the "chain gang" and coaching personnel. In the most typical game, football players run and collide; their pile-ups frequently occur out of bounds. Indeed, one way to end a play is to force a ball-carrying opponent out of bounds; similarly, running out of bounds may be used as a means to stop the clock. Coaches likely advise their players to run or drive an opponent out of bounds when appropriate. Thus, the sidelines, while not on the actual field of play, fall within the zone of danger during a football game. An atypical field layout does not alter the existence of this risk and such a layout does not represent the only risk of coaching the sport.[7]

¶ 17. Although we rule for the respondents on this appeal, we distance ourselves from one of their arguments. The respondents say that Shain made a poor choice by coaching on the field of play rather than from a more distant perch such as the regular sidelines of Horlick Field. We disagree. Shain made the *right* choice. He belonged on the field of play with his players, doing exactly what he was supposed to be doing: teaching, supervising, and calling out plays to his players. But our rejection of this argument does not carry the day for Shain for it remains that he is properly held to appreciate the risk that the game of football carries to all within the zone of danger. A coach for eight years, Shain had seen his "fair share" of youth football games

---

[7] In his season opener with the Green Bay Packers, head coach Dan Devine suffered a broken leg in a sideline collision on a regularly configured field. More recently, Penn State coach Joe Paterno was injured in a sideline collision during the the Penn State versus University of Wisconsin football game.

and was fully aware that players run out of bounds, often at full speed. In this particular instance, he knew that a team of 125–pound thirteen- or fourteen-year-olds in full football regalia played directly behind him and could run into him. Shain knew the rules; he knew the game's unpredictability; he accepted the risk.

¶ 18.  Wisconsin has abolished assumption of risk[8] as an absolute defense, but it is an element of contributory negligence. *Moulas*, 213 Wis. 2d at 419. The nature of the sport of football and the intrinsic hazards of playing it and coaching it are widely comprehended. The different, and admittedly unusual, configurations of the football fields in this case do not alter these indisputable facts.[9] The same policies and concerns that underpin the "Baseball Rule" are present in this case. As a matter of law, Shain's contributory negligence outweighs any negligence on the part of the respondents. *See Powless*, 6 Wis. 2d at 86. We affirm the summary judgment.

*By the Court.*—Judgment affirmed.

---

[8] We observe, however, that the title of WIS. STAT. § 895.525 recently was amended to read, "Participation in recreational activities; restrictions on civil liability, *assumption of risk*." 2005 Wis. Act 155, § 56 (eff. Apr. 5, 2006) (emphasis added).

[9] The same is true as to Shain's argument that the layout of the football fields in this case has since been abandoned.